WILLIAM B. CULBERTSON, APPELLANT, *v.* THE STEAMER SOUTH-ERN BELLE; HENRY B. SHAW, WILLIAM M. SHAW, ELAM BOWMAN, SIDNEY. A. LACOSTE, AND JOHN DE SEBASTIAN, CLAIMANTS.

Where a regulation was made in one of the harbors of the Mississippi River, assigning their positions to different species of boats, if the regulation was generally known, it was the duty of all persons to conform to it.

Where a flat-boat was moored at the place designated for flat-boats, and a steamboat, in attempting to land, came into collision with and sunk the flat-boat, the steamboat must be liable for the damage done.

When a steamer is about to enter a harbor, great caution is required. Ordinary care, under such circumstances, will not excuse a steamer for a wrong done.

THIS was an appeal from the circuit court of the United States for the eastern district of Louisiana.

The facts of the case are stated in the opinion of the court.

It was argued by *Mr. Benjamin* and *Mr. Vinton*, for the appellant, and by *Mr. Crittenden*, for the appellees, upon which side there was also an argument filed by *Mr. Pike*.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal, in admiralty, from the decree of the circuit court, for the eastern district of Louisiana.

The libel states that the libellant was the owner of a flat-boat, called The Rainbow, with a cargo of the value of three thousand dollars and upwards; that the said boat, with its cargo, being a stanch vessel of its kind, with an efficient crew, on a voyage down the Mississippi River, was moored, at night, at Grand Gulf, in the proper and usual place for flat-boats, and securely tied to the bank of the river; that while so fastened, close to the shore, the steamer Southern Belle, a regular packet. on said river, in attempting to land at the town of Grand Gulf, run into and sunk the flat-boat, which caused the total loss of the boat and cargo; that the steamer was out of its place and carelessly managed, by reason of which the collision occurred. The libellant claims damages, &c.

The owners of the steamboat, in their answer, allege that she plied as a regular packet between New Orleans and Milliken's Bend, in Louisiana; that in ascending the river on the 3d of January, 1853, shortly before daybreak, she approached the town of Grand Gulf; that, in drawing near the wharf-boat, used as a landing, it was discovered that another steamer was fastened to the wharf; that as the wind was high toward the shore it was deemed unsafe to make fast to the steamer; The Southern Belle, therefore, dropped down, with the intention of coming in astern of the steamer, and below the wharf-boat; that in making this change, the flat-boat was first seen lying close under the high bank of the river, about thirty yards below the wharf-boat; that an attempt was immediately made to back out and avoid the collision, which could not be done, as the wind blew strongly; that the place occupied by the flat-boat was known to be the cotton landing, where The Southern Belle regularly landed every trip to take cotton on board; that the place appropriated for flat-boats was about three hundred yards above the wharf-boat; that the master of the flat-boat was notified before the collision; that his boat was not moored in its proper place, and that he neglected to keep a light, &c.; that the collision was caused, not by any negligence or want of skill on the part of the crew and

officers of The Southern Belle, but in consequence of the negligence of the master and crew of the flat-boat, &c.

The district court decreed in favor of the libellant, for the amount of the damage sustained, which decree was reversed on an appeal to the circuit court. The latter decree is now before us on an appeal.

An ordinance of the town of Grand Gulf, passed in 1838, was given in evidence, relating to the division of the landings for different kinds of boats. In this ordinance, the landings for steamboats, keel-boats, and flat-boats, were designated, and the duties of the harbor-master were defined. An objection by the respondent being made, that no sufficient proof had been offered as to the power of the town to pass the ordinance; the objection was obviated by the fact in the record, which showed that the respondent had introduced the ordinance as evidence. It was then insisted that the ordinance had fallen into disuse by common consent, and could not be considered as evidence of a usage or law. But from the evidence it would seem that the duties of the harbor-master were performed, and that the places of landing for the different boats were generally understood.

Whether a rule on this subject be established by an ordinance or general usage is immaterial, if the regulation has been so made as to be generally known; and this seems to have been the case at Grand Gulf, in regard to the ordinance in question.

The Rainbow arrived, and was moored within the ground designated for flat-boats, and was fastened to the bank the evening which preceded the morning of the collision. The Southern Belle, in ascending the river, arrived at Grand Gulf about daylight—some of the witnesses say a little before, others a little after. It appears that the moon was shining, and that, in passing the flat-boat, it was light enough to read from it the name of The Southern Belle, on her wheel-house, some hundred yards from the shore. The pilot of the steamer intended to land at the steamboat wharf, three hundred and thirty feet above the place where the flat-boat was fastened. But, in approaching, the wharf, he discovered The Atlantic steamer, with cattle on board, occupied it; and the wind being high, he was afraid that an attempt to land, so as to fasten to The Atlantic, might do damage, at least, to the cattle on board of that boat. To avoid this, orders were given to back the boat, and land below the wharf. In doing this, the control of the boat was lost, and the wind to the shore being high, The Southern Belle was thrown against the flat-boat, which immediately sunk her. As the steamer was falling back, it is alleged the flat-boat, for the first time, was discovered; but it was too late, under an adverse wind, to avoid the collision. George W. Smith says, The South-

ern Belle, by keeping on her steam, might have landed above the wharf-boat. That landing, for three hundred yards, is as good as the landing below.

At the time the steamer passed within one hundred yards of the flat-boat, it could be seen two hundred yards or more. A witness states at the time, he could distinctly see across the river. It appears from some of the witnesses, that there was space enough to land the steamer below the wharf-boat, and above the flat-boat.

Sometime during Monday night, a floating log struck the bow of The Rainbow, so as to break a hole through it, but the damage in a short time was repaired. The bow was turned down the stream to avoid the force of the current.

It is objected that the flat-boat had no lights. She had a light on deck, as proved by her captain and another witness, fifteen minutes before the collision, and at the time it occurred; but as she was fastened to the shore, and from the weight of evidence was in her right place, a light was not necessary. Where a boat is anchored in the path of vessels, a light is indispensable; but it is not required where the boat is fastened to the shore, especially at a place set apart for such boats.

When a steamer is about to enter a harbor, great caution is required. There being no usage as to an open way, the vigilance is thrown upon the entering vessel. Ordinary care, under such circumstances, will not excuse a steamer for a wrong done. A vessel tied to the shore is helpless. No movement can be made by it to avoid an entering boat; therefore, the whole responsibility rests on such boat.

It is admitted that where a collision occurs, as the result of uncontrollable circumstances, no responsibility attaches to either party; but this cannot be said of the respondent. The evidence shows no fault in the flat-boat, but there was fault in the steamer. The wind was high when she approached the landing —this should have produced in her officers the utmost vigilance. That they were sensible of this, was shown by their not attempting to fasten to The Atlantic. But they were highly culpable in not keeping up the steam, so as to have the control of their boat. The river was open, so that, had the steam power been kept up, the boat might have been turned against the wind, and made a safe landing. But her headway had been lost by backing, so that she became as a log driven by the winds and waves, and in this manner was thrown upon the flat-boat.

The evidence authorizes the inference that the flat-boat was seen from on board the steamer as she passed it in running up to the wharf. It is inconceivable that others should be able to see the opposite shore of the river, and for a hundred and fifty

yards plainly discern the flat-boat from the steamboat wharf, while the officers of the steamer, in passing so near the shore, should not have observed it. The responsible officers of a steamer, when about to land, are not presumed to close their eyes; on the contrary, all experience requires an exercise of uncommon vigilance. Landing a boat, especially when the wind is high, is always attended with more or less danger. After making due allowance for the lights of the steamer, which enabled persons from the flat-boat or wharf to see the steamer, and read her name while passing, the vision of those on board the steamer could not have been so defective, or blinded by her lights, as not to perceive the flat-boat. The captain of the steamer was not sworn, and from this a strong presumption arises that his evidence would have been against his owners. He must have been on the alert in landing, as his duty required, and indeed as the evidence shows he was.

There is no ground of suspicion that the officers of The Southern Belle designed to injure The Rainbow—on the contrary, when it was too late, they endeavored to avoid the collision. Their fault consisted in not landing above the wharf-boat, or in not keeping up the steam, so as to give them the control of the boat. The flat-boat was plainly discernible from the wharf-boat; and if the officers of the steamer did not see it, it was because they were wanting in vigilance. But whether they saw it, or not, the respondents are liable for the damage done. The decree of the circuit court is reversed.