HUNT & Another *v.* OLIVER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Argued April 5, 6, 7, 1886.—Decided May 10, 1886.

On the voluminous facts in this case, which are referred to at length in the opinion of the court, it was held that the complainant had failed to establish that he was entitled to the relief against the appellants which was prayed for in his bill, and was granted by the court below.

The case is stated in the opinion of the court.

*Mr. Henry M. Duffield* and *Mr. George F. Edmunds* for appellants.

*Mr. C. F. Burton* and *Mr. Alfred Russell* for appellee.

Mr. JUSTICE WOODS delivered the opinion of the court.

The bill was filed by David D. Oliver, the appellee, against Henry S. Cunningham, Garrett B. Hunt, Jacob Eschleman, Philip M. Ranney, Calvin Haines, George J. Robinson, and Henry M. Robinson. The following facts are shown by the pleadings and evidence. In the summer of 1868, Oliver, the plaintiff, was the owner of about twelve thousand five hundred acres of pine lands, and held a contract for the purchase of six thousand five hundred acres more from one David Preston. These lands were in the State of Michigan, mainly in Alpena and Alcona Counties. Six thousand acres of these lands Oliver had purchased in 1866 from the defendants Hunt, Eschleman, and Cunningham, for $35,000. He paid nothing on the purchase money, but secured its payment by a mortgage on the lands purchased and other lands owned by him. In 1867 he put up a steam saw-mill and made other improvements on the mortgaged lands, and carried on the business of manufacturing pine lumber cut from the lands, first with one George W. Hawkins as a partner, and afterwards with the defendant George J. Robinson, to whom he conveyed an undivided one-

fourth in all his lands. In the summer of 1868 the plaintiff was in arrears for interest past due on the mortgage above mentioned, and on a mortgage for $16,000 to the defendants Haines and Ranney, and also on one to E. & G. R. Haines, for $10,000, covering part of the lands included in the Hunt, Eschleman, and Cunningham mortgage. His property was also encumbered by other mortgages to the amount of $13,000; he owed on the Preston contract for the purchase of lands $12,000; he owed an unsecured indebtedness of $6000, and the firm of Oliver & Robinson was indebted in the sum of $25,000, making in all $117,000, without including interest. He had not the ready means to meet his pressing demands. He was, therefore, financially embarrassed, and was, moreover, involved in difficulty with his partner, George J. Robinson, whom he accused of trying to dispossess and defraud him. Thereupon, on June 9, 1868, he wrote to Hunt and Cunningham for help, stating his situation, and asking them to take from him a quit-claim deed of all his property, and to purchase the Haines and Ranney mortgage, the E. & G. R. Haines mortgage, and other indebtedness outstanding against him, to take possession of and manage his property, and, when they had paid all his debts and the property was clear, to reconvey the same to him by quit-claim deed, and for all their trouble and services he offered to pay a reasonable compensation. They did not accede to Oliver's proposition, and matters remained in *statu quo* until September. In the meantime, Oliver went to Buffalo, and there saw Hunt, Eschleman, and Cunningham, and urged them to help him out of his troubles with his partner and his creditors. But they did not yield to his importunities. Of these three persons Cunningham alone had any experience in commercial affairs. Hunt and Eschleman were farmers living in Erie County, New York, and Hunt was Cunningham's father-in-law.

Oliver had given his creditors Haines and Ranney an option to buy his property, but they had declined to purchase. Finally, on September 2, 1868, Cunningham, being urgently entreated by Oliver, left Buffalo and went to Ossineke, in Michigan, Oliver's place of residence, and had an interview with him. Be-

fore leaving, he assigned his interest in the Hunt, Eschleman, and Cunningham mortgage to Hunt and Eschleman, and, as it appears, without consideration paid at the time.

Cunningham, while at Ossineke, accepted, at Oliver's own solicitation, quit-claim deeds from him of all the latter's real estate and bills of sale of all his personal property, including his interest in the firm of Oliver & Robinson. The conveyances were upon their face without condition or trust. Cunningham refused before the deeds were made to give Oliver any writing showing the terms on which he accepted them. Oliver, in his testimony in this case, states that at the time the conveyances were made he understood that "the object of the transfer was a trust ; that he," Cunningham, "was to use the property to pay off the debts, and when the debts were paid to deed it back." In the bill he alleges that "said transfers were made for the purpose of enabling the mortgagees to sell said property in such a way as to pay their own debt, and to pay the other debts of complainant and leave him a surplus." Cunningham testifies that the purpose of Oliver in making the transfer to him was to enable him to hold the title for Oliver, so that the property should not be seized in suits then pending or about to be brought against Oliver, and to enable Oliver to make a sale thereof.

No consideration for the transfers passed at the time of their execution. The deeds were dated September 3, 1868, but were not in fact executed until September 8th, following. Oliver endeavored during the thirty days that followed the date of the deeds to make a sale of his property, but failed. About the first of October, 1868, he was in Buffalo, and, with Cunningham, entered upon a treaty with the defendants Calvin Haines and Philip M. Ranney, who were partners under the name of C. Haines & Co., and with the defendant George J. Robinson, for the sale of the property to them. A contract was agreed on, and, as the appellants insist, was as agreed on, reduced to writing, and dated and executed on October 3, 1868. It was signed by Cunningham, C. Haines & Co., and George J. Robinson, and, for the sake of brevity, is called in the record the Buffalo agreement. It provided, among other things, that

on the expiration of thirty days Cunningham, party of the first part, should convey to C. Haines & Co. and Robinson, party of the second part, all the real estate situated in townships 28 and 29 north, range 8 east, in the counties of Alpena and Alcona, Michigan, which was conveyed to him by Oliver and wife by deed, bearing date on or about the fifth day of September, 1868, and also all the personal property conveyed to him by Oliver by bill of sale executed on the same day, the sale and conveyance to be subject to the following claims:

1st. The Cunningham, Hunt, and Eschleman mortgage upon a part of said real estate, on which mortgage there was unpaid $30,000 and interest.

2d. A mortgage to C. Haines & Co. for about $19,000.

3d. A mortgage to J. B. Wayne for about $12,000, on a portion of said real estate.

4th. A claim of James H. Hill for about $3000.

5th. The copartnership indebtedness of the firm of Oliver & Robinson.

The party of the second part agreed to take the property subject to the above claims, and to assume and pay, at the time of the conveyance by Cunningham, one-half of a debt for about $10,500 due to E. & G. R. Haines, secured by a mortgage executed by Oliver on his lands. The party of the second part further agreed that they would, at the time of the conveyance by Cunningham, release and discharge all mortgages given by George W. Hawkins to Calvin Haines or E. & G. R. Haines, and covering lands in the counties of Erie and Niagara, in the State of New York, or either of said counties, and would protect and save Hawkins harmless therefrom, and from the debt thereby secured.

The contract further provided that the party of the second part, in lieu of paying the one-half part of the mortgage held by E. & G. R. Haines, and of discharging the Hawkins mortgage, should have the option to assign to Garrett B. Hunt the mortgage of C. Haines & Co. against the said real estate of George W. Hawkins, and the debt secured thereby, and in addition to pay or secure the payment to Hunt of the sum of $4000 within one year from the 3d day of November, 1868.

The contract also provided that Cunningham should assign a certain agreement made between Oliver and David Preston for the purchase of about 6500 acres of land in Alpena and Alcona Counties, Michigan, subject to the aforesaid claims, and subject to the contract price of said last-mentioned lands, and the party of the second part agreed that, upon such assignment, they would pay to Preston the contract price, and convey to such persons as Oliver should direct, free of charge, all of said 6500 acres which lay outside of townships 28 and 29 north, range 8 east.

The delay of thirty days provided by the contract was to give Oliver the chance of selling the property within that time if he could. He was not able to sell. On November 13, 1868, Cunningham conveyed to George J. Robinson, Calvin Haines, and Philip M. Ranney, in pursuance of the Buffalo agreement, the lands and personal property therein mentioned. The grantees then formed a partnership under the name of Robinson, Haines & Ranney, for the manufacture and sale of lumber from timber to be cut from the lands and sawed at the mill conveyed to them by Cunningham. On the 9th of January, 1869, a new partnership for the same purpose was formed, under the name of Cunningham, Robinson, Haines & Co., by taking into the firm Henry S. Cunningham. This firm continued in business until its dissolution in January, 1875. It was an unsuccessful venture. It never made or divided any profits. When it ceased business it had not assets sufficient to pay its debts. Three of its members, Cunningham, Haines, and Robinson were adjudicated bankrupts, and Ranney, the fourth partner, was insolvent.

The bill in this case was filed March 12, 1873. It charged a conspiracy between Cunningham, Hunt, Eschleman, Robinson, Haines, and Ranney to defraud Oliver of his property. It averred that, before the Buffalo agreement was reduced to writing and signed, Oliver was compelled to leave, and did leave, Buffalo and was not present at its execution; that the agreement which, before leaving, he consented that Cunningham might make with C. Haines & Co. and Robinson was, that they should pay the Hunt and Eschleman, the James

B. Wayne and the C. Haines & Co. mortgages, and half of the E. & G. R. Haines mortgage, and pay the Hill claim of $3000, and release and discharge Hawkins from all his liabilities growing out of his business with Oliver, and pay all the debts of the firm of Oliver & Robinson, whereupon Cunningham should convey to them all the lands conveyed to him by Oliver and David Preston in townships 28 and 29 north, range 8 east. Having done this, Cunningham was to deed to Oliver all the lands outside of said towns. It was averred that, instead of making the contract to which he had assented, Cunningham made the Buffalo agreement, as hereinbefore set forth, by which Haines, Ranney, and Robinson agreed, not to pay off Oliver's debts, but to receive a conveyance of the lands subject to said mortgages, and bound themselves only to pay off one-half of the mortgage to E. & G. R. Haines.

The bill then charged that Hunt and Eschleman were in fact members of the firm of Cunningham, Robinson, Haines & Co.; that Cunningham put no capital into the firm, and that all the defendants to the bill had carried on the lumber business under said firm-name upon the lands and with the mill of the plaintiff, and had stripped the lands of their best pine timber; that Cunningham had in the manner above set forth secretly and fraudulently effected a sale of said lands to himself and his co-mortgagees; that the Buffalo agreement was a fraud on the plaintiff; that Cunningham's deed to Robinson, Haines, and Ranney was procured by fraud and in furtherance of a conspiracy between all the defendants to obtain the plaintiff's property without consideration, and was made and delivered without payment or discharge by the vendees of the debts of the plaintiff and said Hawkins, and was without consideration and void; and that the mortgage to Hunt, Eschleman, and Cunningham had been paid, and should be charged with the receipts of the mortgagees from the property, to wit, the profits of the said partnership.

The bill prayed that the deed and all the transfers made by Oliver to Cunningham, the Buffalo agreement, and the deed of Cunningham to Robinson, Haines, and Ranney, might be can-

celed as fraudulent and void; that an account might be taken of the issues and profits of said lands received by Cunningham for the benefit of himself and Hunt and Eschleman, and the mortgage held by them be charged with the amount thereof; that the plaintiff might be at liberty to redeem; and that all the defendants might be required to deliver up possession of the mortgaged premises to the plaintiff, free and clear of all incumbrance put thereon by them.

Before the filing of the bill in the present case, to wit, on April 8, 1869, Hunt and Eschleman had filed their bill in the Circuit Court of the United States for the Eastern District of Michigan, to foreclose the mortgage executed to them and Cunningham by Oliver, to which Oliver and wife, George J. Robinson, Calvin Haines, Ranney, and Cunningham were made defendants. Oliver filed an answer and cross-bill, in which he set up by way of defence substantially the same facts as are relied on for relief in the present case. After the taking of a large mass of evidence in that case the court dismissed the cross-bill without prejudice, and rendered a decree in favor of Hunt and Eschleman, on their note and mortgage, for $47,495, and directed a sale of the mortgaged premises to pay the same. Upon this decree a sale was made on August 28, 1873, to Garrett B. Hunt, for $50,699.44, which was confirmed on May 8, 1874. The premises brought sufficient to pay the debt secured by the mortgage.

The defendants Hunt and Eschleman filed a joint answer, in which they traversed all the material facts averred in the bill on which the plaintiff's prayer for relief was based, and set up the decree made in the suit for the foreclosure of their mortgage in bar of the present suit. Separate answers were also filed by the other defendants. After the taking of testimony and a reference to and report by a master, the Circuit Court, on final hearing, rendered a decree in favor of the plaintiff, against all the defendants, for $41,418.87, and that the defendants surrender to the plaintiff all the lands conveyed by him to Cunningham by deeds dated September 3, 1868.

From this decree Hunt and Eschleman alone have appealed.

The appeal brings up the question how far the evidence jus-

tifies the decree against Hunt and Eschleman. The gravamen of the bill is that the defendants, including the appellants, conspired with each other to secure for themselves without consideration the property of the appellee, and in pursuance of this purpose induced the plaintiff to execute deeds and transfers of all his property to Cunningham; that, having thus divested the title of the plaintiff and vested it in one of their own number, they caused the execution of the Buffalo agreement, which was greatly to the disadvantage of the plaintiff, and was different from the verbal agreement between him and Cunningham and the other defendants; that the Buffalo agreement as reduced to writing was never performed; but that the defendants, having organized the partnership of Cunningham, Robinson, Haines & Co., appropriated and used the property of the plaintiff without compensation or consideration passing to him, and by these means the large and valuable property of which the plaintiff was the owner before his conveyance thereof to Cunningham was wrested from him and used and consumed by the defendants.

We are of opinion, after a careful consideration of the record, that the decree of the Circuit Court, so far as it concerns the appellants, is not supported by the evidence.

The deeds and transfers of his property by the plaintiff were not made to the appellants, but to Cunningham, and there is no proof that they had any part in persuading Oliver to make them. On the contrary, Oliver himself testifies that the transfer of his property was suggested by himself for his own advantage; that he offered by letter to convey his real and personal estate to Hunt and Cunningham, jointly; and that they declined to accept his conveyance. He went from Ossineke, in Michigan, to Buffalo to try if he could not, by a personal interview, induce Hunt, Eschleman, and Cunningham to accede to his wishes, but they refused to become his grantees. After much personal importunity he finally persuaded Cunningham to accept a transfer of his property for the purpose, as it seems to us, of delaying his creditors until he could make a favorable sale, and thus save something for himself after paying his debts. Cunningham went from Buffalo to Ossineke for the purpose of

receiving the deeds and transfer, but there is no proof that either Hunt or Eschleman solicited or advised Oliver to make the conveyances to him. It was the latter's own scheme, conceived and carried out by himself, and in his own interest.

Nor is there any evidence that either Hunt or Eschleman took any part in the making of the Buffalo agreement. Oliver himself fails to connect them with it. He merely says that Hunt and Eschleman, Haines, Ranney, George J. Robinson, and Henry M. Robinson were present at the discussion prior to the making of the Buffalo agreement. There is no proof that either Hunt or Eschleman urged or even advised the making of that agreement, or any agreement whatever, for the sale by Oliver and the conveyance by Cunningham of the lands and property transferred by Oliver to Cunningham. There is no proof that either of them was present when the Buffalo agreement was signed.

The charge that the agreement was not the contract to which Oliver had assented is supported by only one witness, and that is Oliver himself. On the other hand, there is much direct evidence to show that the agreement was just what he had consented it should be. Besides, Oliver's own conduct shows beyond controversy his assent to the agreement. He knew as early as the 10th of October what the written agreement was, for on that day, according to his own testimony, he went to the office of Williams, the lawyer who wrote the agreement, and with whom it was left, and saw and read it. He says that after reading it, he complained to Cunningham that the agreement was not the contract to which he had verbally assented. In this he is contradicted by Cunningham, and both Hunt and Eschleman swear that, after Oliver had read the agreement, he said to them that he was well satisfied with it. But Oliver does not swear, nor is there any proof, that he expressed any dissatisfaction with the agreement to Haines, Ranney, or Robinson, the other parties to the contract, and who by its terms were to become the vendees of the property. He took no steps whatever to prevent the execution of the agreement. On the contrary, on November 13th, more than a month after he had seen and read it, he allows Cunningham, without objection

from him, to make deeds for the property to Haines, Ranney, and Robinson, in accordance with its stipulations.

The record shows other pregnant facts. On October 2, 1868, the day before the execution of the Buffalo agreement, Oliver signed a contract in writing, in which, in consideration of the execution of that agreement, he covenanted to convey to Robinson, Haines, and Ranney certain lands not included therein, and, on November 12, 1868, a month after he had seen and read the Buffalo agreement, he executed to Robinson, Haines, and Ranney a deed for said lands, "together with the right to run logs through Devil River over and through any lands owned by said David D. Oliver on the second day of October, 1868, and for that purpose to dam said river, and to flood any lands that may be necessary for the purpose of running logs," etc.; and afterwards, on January 12, 1869, he procured the acknowledgment of his wife to the deed, which was delivered, of course, after that date. This was equivalent to a ratification under his own hand and seal of the Buffalo agreement. Both the agreement by which he contracted to convey the lands and his deed of conveyance are in the record.

If Oliver was not satisfied with that agreement, as reduced to writing, he should have assailed it at once. As soon as he learned of the fraud which he alleged had been practiced he should have repudiated the contract, and informed Robinson, Haines, and Ranney thereof. But he did nothing of the kind. He allowed the contract to be carried out by Cunningham without objection. He himself made a deed in pursuance of the contract, and he permitted the vendees to expend large sums of money in establishing and carrying on the business for which they purchased the property. These facts prove beyond question, either that the Buffalo agreement was made upon the terms to which he had given his assent in advance, or if not, that he was satisfied with it as it was written, and ratified and performed it. All the complaints of Oliver, therefore, in reference to the execution of the Buffalo agreement, are shown to be groundless.

But the case stated in the bill fails for want of proof of the necessary and vital averment, that these appellants were part-

ners in the firm of Cunningham, Robinson, Haines & Co., and, as such, appropriated and converted to their own use the property of the plaintiff.

The partnership just named was formed under written articles, under which Henry S. Cunningham, George J. Robinson, Calvin Haines, and Philip M. Ranney, and no others, became partners. With the exception of. George J. Robinson, every member of the firm named in the articles of partnership testifies that neither Hunt nor Eschleman was in fact a partner. Hunt and Eschleman testify to the same effect. The testimony of George J. Robinson may be laid out of consideration. He is not only contradicted on this point by every other witness who testifies on the subject, but is flatly contradicted by his own deposition and answer in the foreclosure suit brought by Hunt and Eschleman against Oliver. Without going into details, it is sufficient to say that this witness is so thoroughly discredited that his deposition, uncorroborated, is not worthy of attention in settling the facts of the case.

It is shown beyond question that neither Hunt nor Eschleman ever agreed to become partners in the firm of Cunningham, Robinson, Haines & Co.; and that they never held themselves out as partners, or contributed anything to the capital of the firm, or derived any profit whatever from its business. They were, therefore, not partners in any sense. *Berthold* v. *Goldsmith*, 24 How. 536; *Felichy* v. *Hamilton*, 1 Wash. C. C. 491.

The only facts upon which the contention of the plaintiff is based that Hunt and Eschleman were partners in the firm are, first, that Cunningham appeared as a partner under circumstances which indicated, as the plaintiff claims, that his contribution to the capital of the firm was the money due on the mortgage to Hunt and Eschleman. This position, it may be observed, is at variance with the bill, which avers that Cunningham did not contribute any capital to the firm. The second fact relied on to show that Hunt was a member of the firm is, that he lent it his credit by endorsing its paper.

But these facts are inconclusive. Hunt could aid Cunningham, his son-in-law, by advancing him means and by endorsing

paper of the firm of which Cunningham was a member, without himself becoming a partner in the firm. These acts of Hunt were perfectly consistent with his testimony, and that of all the other witnesses, that he was in no sense a member of the firm. Conceding, therefore, that Hunt and Eschleman allowed Cunningham to get a foothold in the firm by authorizing him to promise that the property of the firm should be protected from the Hunt and Eschleman mortgage, and the testimony shows nothing more, this does not prove or tend to prove that they were partners. If they had given Cunningham outright their whole interest in the mortgage, that fact would not have invested them with any rights in the property of the firm, or subjected them to its liabilities. The contention that they were partners in the firm of Cunningham, Robinson, Haines & Co. is based on vague conjectures built on the sayings and doings of others, which neither Hunt nor Eschleman is shown to have authorized or ratified.

Much stress is laid by Oliver's counsel upon the alleged fact that the assignment by Cunningham to Hunt and Eschleman, of his interest in Oliver's mortgage to Hunt, Eschleman, and Cunningham, was without consideration and simulated. We regard this assignment as a fact of no weight in this controversy. As Hunt and Eschleman are shown not to have been partners in the firm of Cunningham, Robinson, Haines & Co., the assignment did not injuriously affect Oliver's rights as against them. Whether it was made with or without consideration was a matter of no concern to Oliver. The fact is, and so the record shows, that it was made upon the advice of counsel, and Oliver was told of it by Cunningham early in November, 1868. Its purpose evidently was to avoid any embarrassment to Hunt and Eschleman in case Cunningham became Oliver's vendee of the mortgaged lands, and not to gain any unfair advantage over him.

Finally, the evidence shows that all the stipulations in the Buffalo agreement for the benefit of Oliver have been performed by the parties, except when his own conduct has prevented performance; the $4000 has been paid to Hunt on Oliver's account, and Hunt has acknowledged its receipt, and

the Hawkins mortgage has been assigned to Hunt according to the contract; all of the lands conveyed by him to Cunningham, and all of the Preston lands, not in townships 28 and 29, have either been conveyed to him by Cunningham or will be upon his demand. There are over 6000 acres of these lands to which he now has a clear legal or equitable title, and which are valued by an uncontradicted witness at $40,000. In short, the Buffalo agreement, which the bill assails, appears to have been made with Oliver's assent, to have been to his advantage, and to have been fairly performed.

On every ground for relief alleged in the bill there is a failure of proof. This view renders it unnecessary to consider the effect, as a bar to the relief sought in this case, of the decree in the suit for foreclosure brought by Hunt and Eschleman against Oliver.

*The decree of the Circuit Court against the appellants Hunt and Eschleman must, therefore, be reversed and the cause remanded, with directions to dismiss the bill as to them.*