### DONALD v. GUY et al.

#### (District Court, E. D. Virginia. December 17, 1903.)

1. PILOTS—ACTION AGAINST FOR NEGLIGENCE.

 The fact that a vessel settled and paid a claim against her for damages by collision without suit does not affect the right of the owners to recover over against the pilot through whose negligence it is alleged the liability was incurred, the burden resting upon libelants in any case to prove the vessel's liability and its amount, as against respondent, and that it was incurred through respondent's negligence.

2. SAME—LIABILITY FOR NEGLIGENCE CAUSING COLLISION.

 It is the settled law of the admiralty of the United States that a vessel is liable for a collision caused by the negligent acts of her pilot, although the pilotage was compulsory, and also that the pilot whose negligence caused the collision is liable therefor to such vessel as well as to the vessel injured.

3. SAME—PILOT ASSOCIATION—JOINT LIABILITY FOR NEGLIGENCE OF MEMBER.

 The Virginia Pilot Association is an unincorporated association of pilots formed for the purpose of controlling and regulating the business of its members, and through which they in effect act by joint co-operation in performing their duties as pilots. The association elects officers, leases offices, owns property, including the pilot boats used, assigns its members to service in turn, and collects all pilotage fees earned by them, which are paid into bank to its credit, and divided between the members after payment of the expenses of the association. *Held*, that the members of such association were jointly liable for the negligent performance by one

¶ 2. See Collision, vol. 10, Cent. Dig. § 236; Pilots, vol. 39, Cent. Dig. § 19.

of its members of his duty as a pilot, through which the vessel of which he was in charge was subjected to liability for collision, there being nothing in the statutes of Virginia providing for the regulation and licensing of pilots by a board of pilot commissioners inconsistent with such joint liability.

In Admiralty. Libel to recover damages arising from alleged neglect of pilot. On exceptions to libel.

Hughes & Little, for libelant.

R. C. Marshall and D. Tucker Brooke, for respondents.

WADDILL, District Judge. This is a libel filed by the owner of the steamer Santuit to recover damages sustained by the owners of the schooner George Churchman, and paid by the libelant here, arising from the collision between the Santuit and Churchman in Chesapeake Bay, near Thimble Light, on the 14th of January, 1901, and which collision libelant alleges was brought about by the negligence and want of proper care on the part of the respondent Frank W. Guy, a licensed Virginia pilot, and who as such was in charge of the navigation of the Santuit at the time of collision. By the libel it is sought to charge the said Guy and his associates, some 26 in number, who compose the Virginia Pilot Association, jointly with the damages sustained by said collision.

The case is now before the court upon the exceptions filed by the respondents to the libel, which present the legal question as to the individual liability of the members of the Pilot Association for the acts of one of their number.

A preliminary question is presented as to the effect of the libelant agreeing upon the amount of damages sustained by the Churchman, and the payment of the same, without notice to the respondents, if it was proposed to hold them liable for the collision. This conduct on the part of the libelant does not disentitle a recovery in this action, but bears upon the amount of the recovery, if anything, that he is entitled to. No settlement, it is true, need have been made with the Churchman on account of the claim for damages sustained in the collision, as libelant might have awaited the result of suit for the same by the Churchman. The failure so to contest the claim, and the payment thereof, should not serve to relieve the respondents altogether from liability, if any exists against them, by reason of said collision. The payment of the alleged damages in advance of a judicial ascertainment of the same in no manner binds the respondents to pay the amount thus acquiesced in, or, indeed, affects their liability. They have the full right in this action to make every defense that could have been made in the libel in their own behalf or by the Santuit, and the payment does not establish even a prima facie case either as to the amount due or the right of recovery. It affects the burden of proof rather than otherwise; that is to say, the libelant assumes the burden to establish the negligence of the respondent Guy, as well as the freedom from fault of the Churchman, and also of his own vessel, the Santuit. The authorities to sustain this position are numerous, and quite conclusive. Oceanic Steam Nav. Co. v. Compania Trans-Atlantica Espanola, 144 N. Y. 663, 39 N. E. 360; Wil-

liams v. Greer's Adm'rs, 4 Hayw. 235; Village of Port Jervis v. First Nat. Bank, 96 N. Y. 550, 556; Aberdeen v. Blackmar, 6 Hill, 324; Binsse v. Wood, 37 N. Y. 526, 531; Bridgeport Fire Ins. Co. v. Wilson, 34 N. Y. 275; Swansey v. Chase, 16 Gray, 303.

The right of the libelant to recover over against the respondents, if, indeed, they are liable at all, exists as well where a settlement has been made as if the question of their liability and the amount of the same had been concluded by judgment. Smith v. Foran, 43 Conn. 244, 21 Am. Rep. 647; Swansey v. Chase, 16 Gray, 303; Gray v. Gaslight Co., 114 Mass. 149, 19 Am. Rep. 324.

Respondents refer in opposition to this view to the cases of Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427, and Washington Gas Co. v. District of Columbia, 161 U. S. 329, 16 Sup. Ct. 564, 40 L. Ed. 712. A careful review of these cases will be found to contain nothing inconsistent with the views herein expressed. They treat rather of the effect of the failure of a defendant jointly liable with another to appear and defend a suit of which he has notice, involving possible liability, than otherwise, and apparently concede the existence of the liability.

Coming to the question of the liability of the members of the Pilot Association for the individual acts of each other, treating them either as partners, or parties jointly liable for the acts of one another, consideration should be had to the specific averments of the libel. After setting out that the defendants named, at the time of the collision and the filing of the libel, were licensed Virginia pilots, under the laws of the state of Virginia, and having the right to charge compulsory pilotage, provided they tendered their services, the libel avers that:

"Third. The said defendants, Frank W. Guy [and naming the other 26], as a matter of convenience to themselves, and in order to avoid conflict as to their respective rights to board vessels, have formed themselves into an unincorporated association, which they call the Virginia Pilot Association. The libelant avers that the general terms of that association are that the pilots have agreed among themselves that they shall take turns in boarding vessels which are required by the statute to take a pilot. By a further agreement among themselves, the fees, which would otherwise be due the individual pilots for pilotage, are not paid by the vessels boarded to the special pilot that boards her, but are paid into a common fund, and put in bank to the credit of the said Virginia Pilot Association. The said parties, as members of the Virginia Pilot Association, own various property, including pilot boats, office furniture, and other property necessary to the conduct of their business, and they lease offices and undergo various other expenses necessary to the conduct of said business. The funds collected from vessels for pilotage constitute a common fund, out of which they pay all expenses incident to the business, including office expenses, expense of operating their pilot boats, etc., and the balance remaining after such expenses is divided among the said parties. The bills for pilotage are made out in the name of the Virginia Pilot Association, and the bills against the said business are paid by checks of the Virginia Pilot Association. The said defendants have elected O. E. Edwards as president of the said association, and the above named W. T. Stanworth as secretary of the said association."

The exception to this libel admits the truth of its averments of fact, and this case is therefore to be disposed of upon the pleadings thus made.

It would seem quite clear upon the averments of the libel, as thus admitted by the exception, that a liability would arise against the

defendants jointly for their acts, unless there be some statute or rule of public policy to the contrary. The question of the liability of the Santuit for the negligent acts of her pilot, as well as of the pilot to the Santuit, and the Churchman also, is no longer an open question in the courts of this country. In The China, 7 Wall. 53, 67, 68, 19 L. Ed. 67, the Supreme Court, after a full and elaborate review of the law, held that a libel in rem would lie against an offending vessel for the negligent act of a pilot employed under compulsion; and also recognized the fact of the liability of the pilot for damages arising from his negligence, as well to the vessel employing him as to the one injured in a collision. Sideracudi v. Mapes, 3 Fed. 874, 875; Wilson v. Charleston Pilots' Ass'n et al.; 57 Fed. 227. These latter decisions are from the District Court—the former by Judge Choate, of New York, and the latter by Judge Simonton, now Circuit Judge of this circuit.

The respondents insist that they are relieved from joint liability for the acts of each other because of the statute of the state of Virginia under which pilots are appointed, regulated, and controlled. Act Gen. Assem. Va. April 21, 1882 (Acts 1881–82, p. 392, c. 62), which now constitutes chapter 89 of the present Code of Virginia.

It is true by this act provision is made for the appointment of pilots, and a board of pilot commissioners, the latter to look after and regulate the conduct of the pilots; and elaborate directions are prescribed concerning the rights and acts of pilots, and their powers and privileges; and said board is given extensive powers for enforcing the claims of pilots, and of their control over pilots. But by section 29, p. 397, of the act, it is expressly provided that "nothing herein shall authorize such board to decide upon the liability of the pilot or his apprentice to any party injured by his negligence or misconduct, or to prevent such party from recovering for any damage occasioned. thereby" (section 1982, Code 1887); and by section 2, p. 392, of the act (section 1955, Code 1887), the board is authorized to make such rules as it may think necessary for the proper government and regulation of pilots licensed by them.

Indeed, the entire act of assembly referred to contemplates a plan of pilotage inconsistent with the conduct of the business as an individual enterprise by any one pilot, and which could only be rendered by the joint operation of a number of persons. Section 7, p. 393, of the act thus refers to the pilots:

"(7) Every pilot, or the company to which he belongs, shall keep one sufficient boat of at least 30 feet keel, which he shall be attached to and cruise in, and any one acting as a pilot without having such a boat, shall forfeit $150.00 to any person who may sue for the same." Section 1960, Code 1887.

There seems to be nothing in the statute referred to inconsistent with the pilots' joint liability for the negligent acts of each other, and the old statutes of Virginia, down to the Code of 1849, in terms treated the pilots' associations as partnerships. Act May 1, 1755, § 4 (6 Hen. St. at Large, p. 491, c. 11); Act Dec. 26, 1792, Code 1803, p. 239, § 12; Act Jan. 23, 1802, Code 1803, § 9, p. 417; Act Feb. 10, 1819, § 11; 2 Rev. Code 1819, p. 123, c. 216. Whether the respond-

ents be technically partners or not, upon the charges made in the libel, and conceded by the exception, they combine all the elements of a copartnership, and on reason as well as authority should be so treated and held liable as such.

In the recent case of Meehan v. Valentine, 145 U. S. 611, 618, 623, 12 Sup. Ct. 972, 973, 975, 36 L. Ed. 835, the Supreme Court of the United States had under review the question of partnership, and quite fully discussed the doctrine of what were the requisites of a partnership; and Mr. Justice Gray, speaking for the court, referring to Ward v. Thompson, 22 How. 330, 16 L. Ed. 249, said (page 618, 145 U. S., page 973, 12 Sup. Ct., 36 L. Ed. 835): "The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits;" and later on (page 623, 145 U. S., page 975, 12 Sup. Ct., 36 L. Ed. 835) says, after referring to this definition:

"If they do this, the incidents or consequences follow that the acts of one conducting the partnership business are the acts of all; that each is agent for the firm and for the other partners; that each receives part of the profits as profits, and takes part of the fund to which the creditors of the partnership have a right to look for payment of their debts; that all are liable upon contracts made by any of them with third persons, within the scope of the partnership business; and that even an express stipulation between them that one shall not be liable, though good as between themselves, is ineffectual as against third persons; and participation in the profits is presumptive, but not conclusive, evidence of partnership."

The Supreme Court in Berthold v. Goldsmith, 24 How. 536, 16 L. Ed. 762, in discussing the liability of partners (Mr. Justice Clifford speaking for the court), said:

"Actual participation in the profits as a principal, we think, creates a partnership as between the parties and a third person, whatever may be their intention in that behalf, and notwithstanding the dormant partner was not expected to participate in the loss beyond the amount of profits. Every man who has a share in the profits in a trade or business ought also to bear his share of the losses, for the reason that in taking a part of the profits he takes a part of the fund or trade on which the creditor relies for payment."

The rule in this latter case was recognized by the same court in Seymour v. Freer, 8 Wall. 221, 19 L. Ed. 306; Hunt v. Oliver, 118 U. S. 212, 221, 6 Sup. Ct. 1083, 30 L. Ed. 128; as well as in the case of Meehan v. Valentine, supra. This same test of a copartnership is supported by authorities almost without number; as is also the proposition that the members of an unincorporated association, which shares profits, are liable as partners. Keasley v. Codd, 2 C. & P. (12 E. C. L.) 408; Brown's Ex'r v. Higginbotham, 5 Leigh, 633, 27 Am. Dec. 618; Jones v. Murphy, 93 Va. 214, 24 S. E. 825; Fleming v. Lay, 109 Fed. 952, 48 C. C. A. 748; Meehan v. Valentine, supra; Ricker v. Trust Co., 140 Mass. 346, 348, 5 N. E. 284; Railroad Co. v. Pearson, 128 Mass. 445; Frost v. Walker, 60 Me. 468; Davison v. Holden, 55 Conn. 103, 10 Atl. 515, 3 Am. St. Rep. 40; Kaiser v. Bank, 56 Iowa, 104, 8 N. W. 772, 41 Am. Rep. 85; Robbins v. Butler, 24 Ill. 387, 426; Kramer v. Arthurs, 7 Pa. 165; McGovern v. Robertson (N. Y.) 22 N. E. 398, 5 L. R. A. 589.

Whether the respondents are liable as copartners or not, there would seem to be no reason why they should not be held jointly liable for the faithful performance of their duties, discharged under the circumstances set forth in the libel, where it appears that although not incorporated, and therefore not liable as an association, they in effect act by joint co-operation in the discharge of their duties. They divide the work among themselves, so that each one gets a full share; the fees are paid by the vessels boarded, or to which services are tendered, not to the pilot who actually performs the service, but it goes into a common fund, and is placed in bank to the credit of the pilot association; as members of the association, they own personal property of various kinds; lease offices for the use of the association; bills for services are made out in the name of the association, and bills against the business are paid by checks of the association; they also have a president and secretary of said association. Railroad Co. v. Ross (Ill.) 31 N. E. 412, 34 Am. St. Rep. 49; Cobb v. Abbott, 14 Pick. 289; Steel v. Lester, L. R. 3 C. P. D. 121; Machine Co. v. Keifer (Ill.) 25 N. E. 799, 10 L. R. A. 696, 23 Am. St. Rep. 688; Connolly v. Davidson, 15 Minn. 519 (Gil. 428), 2 Am. Rep. 154; Champion v. Bostwick, 18 Wend. 175, 31 Am. Dec. 376.

In his recent valuable treatise on Admiralty (Hughes, Adm. pp. 34–36), the author, an admiralty lawyer of recognized ability, strongly maintains the doctrine that pilots are jointly liable for the negligent acts of each other rendered under the circumstances of the present case.

That copartners and the members of a joint association are liable for the tortious acts of each other when the same are committed in the discharge of their respective businesses or duties, and in furtherance of the objects and aims of the copartnership or association, is well settled; and certainly in a case like the present, where the services to be rendered by the respondents require a high order of skill to intelligently discharge, it would seem both plain and right that if persons acting in such capacity negligently discharge their duties they should one and all be liable for the consequences which follow. Hyrne v. Erwin, 23 S. C. 226, 55 Am. Rep. 15; Mellors v. Shaw, 1 Best & S. (101 E. C. L.) 437; Ashworth v. Stanwix, 3 L. & E. (107 E. C. L.) 700; United States v. Baxter (C. C.) 46 Fed. 350; Cobb v. Abbott, supra; Moreton v. Harden, 4 B. & C. (10 E. C. L.) 223, 316; Connolly v. Davidson, supra; Champion v. Bostwick, supra; Railway Co. v. Shacklet, 105 Ill. 364, 44 Am. Rep. 791; Story, Part. (7th Ed.) §§ 166, 167.

There is nothing in the Virginia pilotage law that operates to relieve the respondents from joint liability, and it would be contrary to public policy if such were the case. Pilots are, it is true, the creatures of the statute, and they are required to give a $500 bond, but upon what condition it does not appear, nor for whose benefit it is given. It is presumably for the faithful discharge of their duties, and not for the benefit of those who may suffer from their negligence or want of skill. Sideracudi v. Mapes (D. C.) 3 Fed. 876. The pilotage laws are enacted in the interest of commerce; and while large rewards are offered to persons embarking in this undertaking, and to

some extent commerce may be burdened as well as benefited thereby, still, in the main, the legislation is in the interest of the latter, and should be broadly construed to that end. Certain it is, it was not passed in the interest of the pilots particularly, further than to accord them their just dues and fair reward and remuneration for their services. Nor is it contrary to public policy that these functionaries should be held liable for the acts of each other, where they jointly act, as in this case. In this age, when the business of the country has grown to the extent that it has, and the mediums of commerce are such as to make it impracticable for them to discharge their duties intelligently and effectively acting in their individual capacity, as is apparent from the law itself, just why they should not be jointly liable cannot well be perceived, unless it be that the laws in question were enacted solely in their interest, which surely cannot be the case. So far as the public is concerned and commercial interests are affected, every consideration would dictate that they should be held liable for the acts of each other, since they so act together, and that each should be the monitor of the behavior, the conduct, and the capacity of the other, thus tending to insure some security to the public and to the persons whom they serve and from whom they receive their patronage. The plan of individual liability would afford no security in fact, since an entirely unworthy or irresponsible member might discharge the duty which is made compulsory by law to be performed, and the person affected would neither have the opportunity of protest nor notice of such inefficiency.

The chief theory on which joint liability is denied in this case is the lack of any contractual relation between the respondents generally and the shipowner for whom the pilot performed the service; the contention being that each case stands upon its own merit, each rests upon the contract made between the ship on the one hand and the pilot on the other, and that the pilot association has no lot or part in this undertaking, and that the same is not contemplated in the organization between the members of the association. Conceding this to be true, the argument is entirely specious, for the reason that the service does not depend on the contract between the parties. It lacks the most essential element of contract; that is, mutuality of agreement. It is compulsory pilotage, plain and simple. The pilot charges, and the vessel pays, not because of any contract between them, but by virtue of the state law imposing upon the vessel served, or to which the service is tendered, in behalf of the pilot, a fixed and definite compensation. All that has to be done is to proffer the service, and liability attaches, although no pilotage be actually performed.

Counsel for the respondents refer to the case of Mason v. Ervine (C. C.) 27 Fed. 459, to support their contention of the nonliability of the members of the association in this case. This decision, while apparently supporting their view, arose under a local statute of the state of Louisiana, which would seem to relieve its force as authority in this case. The determination of the present question was not necessary to the decision of that case, since it was held that the collision was caused by the negligence of the vessel suing, and not of

the individual pilot in charge. Reference has also been made to The City of Dundee and The City of Reading (D. C.) 103 Fed. 696, and 108 Fed. 679, the latter being a decision of the Circuit Court of Appeals for the Third Circuit on appeal from the former decision. This case arose in the Eastern District of Pennsylvania, as the result of a collision in the Delaware river between Camden and Philadelphia; and, while there is not enough in the decision to tell what were the peculiarities of the local pilotage laws under consideration in that case, still it sufficiently appears that whatever may have been said by that court on this subject was mere obiter. There the City of Reading, a ferry boat, libeled the City of Dundee, an ocean steamship, anchored in the river, because of her improper place of anchorage, and her failure to give proper signals; and the court held that the Dundee was properly anchored, and did give the proper fog signals, and that there was no negligence on the part of the individual pilot in making the improper anchorage.

Wilson v. Charleston Pilots' Association (D. C.) 57 Fed. 227, 233, a pilots' association under the laws of South Carolina, seems to have been a case arising under an act similar in many respects to the Virginia act, and there the question of liability was squarely raised; but Judge Simonton, after reviewing the subject of individual liability of the pilot, as well as that of fault in the case, decided that inasmuch as it appeared that the damage sued for arose from the negligence of the libelant, and not that of the pilot, it was not necessary to pass upon the liability of the association.

From what has been said it follows that the exception should be overruled, and a decree entered accordingly.