### GUY et al. v. DONALD.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1907.)

### No. 600.

1. PILOTS—NEGLIGENCE—COLLISION—STEAMER AND SCHOONER CROSSING.

A pilot, employed to take a steamer into port and in charge of her navigation, *held* in fault for a collision with a crossing schooner in keeping his course and speed and attempting to cross ahead of the schooner, in violation of articles 22 and 23 of the inland navigation rules (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), which required him to avoid passing ahead and to stop and reverse, if necessary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pilots, § 19.]

2. SAME—LIABILITY TO VESSEL—DAMAGES CAUSED BY NEGLIGENCE.

A licensed pilot, enjoying the emoluments of compulsory pilotage, is in a different class from an ordinary employé, and may be held liable over to the vessel for damages which she has been compelled to pay for a collision occurring through his neglect or want of skill while in charge of her navigation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pilots, § 19.]

**3. SAME—SUIT AGAINST PILOT—PROOF OF DAMAGES.**

That a vessel settled a claim for damages against her for collision without suit does not preclude a recovery over of the amount paid from the pilot who was in charge of her navigation, where it is satisfactorily proved that he was solely in fault for the collision, and the amount of the damages sustained by the injured vessel is fully proved and exceeds the amount paid in settlement.

**4. SAME—DEFENSES—LACHES.**

Failure to give the respondent notice of such proposed settlement or delay in bringing the suit are not defenses to such suit, where he has suffered no injury therefrom.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Admiralty.

See 135 Fed. 429.

D. Tucker Brooke and R. C. Marshall, for appellants.

Robert M. Hughes, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. This libel in admiralty was filed November 10, 1902, by Donald, the owner of the steamer Santuit, against Franklin W. Guy, a licensed Virginia pilot, and also against some 25 other pilots, who, with said Guy, were alleged to constitute an unincorporated association of licensed pilots, called the "Virginia Pilot Association." The libel seeks to hold them all jointly liable for the damages which Donald, as owner of the Santuit, had been called upon to pay by reason, as it was alleged, of the negligence of Guy, a member of the pilot association, while acting as pilot on board the Santuit. The District Court (127 Fed. 228; 135 Fed. 429) held that Guy had neglected to use proper skill and caution, and that the other members of the Virginia Pilot Association were jointly liable with him for his negligence. A decree was entered against all the respondents, which was brought by appeal to this court for review.

The principal matter controverted at the first hearing was whether or not the other pilots of the Virginia Association were answerable for the neglect of their associate, Guy, and this court certified that question to the Supreme Court of the United States. The Supreme Court has held that the relation between Guy and the other pilots of the Virginia Association was not such as to create a joint liability for each other's neglects. Guy v. Donald, 203 U. S. 399, 27 Sup. Ct. 63, 51 L. Ed. 245. This ruling requires us to reverse the decree of the District Court as to all the defendants except Guy, and the matter before this court at this hearing is whether the decree against Guy is right and should be affirmed.

Early on the morning of January 14, 1901, the steamer Santuit, on a voyage from the West Indies bound for Norfolk with a cargo of fruit, reached the mouth of the Chesapeake Bay, and was spoken by the Virginia pilot boat outside the Capes. The pilot Franklin W. Guy was put on board to bring her in, and thereupon, as was his duty, he took charge of her navigation. It was just after early dawn, and some vessels were still carrying their lights. The weather was clear, and but one or two vessels were in the vicinity. Guy brought the steamer

up the channel leading into Hampton Roads, and when about two miles from Thimble Light a three-masted schooner was sighted about three points on the steamer's port bow and from one to two miles off. The schooner was showing her green light, and was heading about north on the port tack. The wind was light and about north-northwest. The steamer was heading west by north, ¾ north, and making her usual full speed of ten knots. The schooner held her course, and the steamer held her speed and course, until a few minutes before the collision, and until the vessels were three lengths apart, when the pilot ordered the steamer's engines reversed full speed astern, but it was too late to avoid the collision. The schooner was struck near her starboard fore-rigging, and cut down nearly to the water. Being without cargo, she did not sink and was towed in onto the mud flats. She was afterwards put on a railway and repaired. The claim of the schooner for the cost of repairs, demurrage, and loss of stores was $4,375. The owner of the Santuit, upon becoming satisfied that his steamer was solely in fault for the collision and being threatened with suit, under the advice of counsel, paid the owner of the schooner $3,175 in settlement, by way of compromise, to avoid having his steamer libeled. Upon the testimony adduced in this case, there can be no doubt that this was a wise settlement. The schooner was guilty of no fault whatever. She kept her course, and did nothing to embarrass the steamer.

The pilot, Guy, justifies his navigation by two circumstances: First. that the schooner, having slacked down her main and fore topsails to clear the spring stay, when she had gone about had left them so while on the tack she was sailing, and the pilot took this as an indication that she was then just about to go about. This was an inference made from a very doubtful premise. In fact, the schooner had slacked her topsails, when she tacked off Willoughby Spit buoy, and had kept them down for convenience; and this the pilot could have ascertained by a closer watch of the schooner during the time she was under observation. Another justification he attempts is that there was another steamer just ahead of him, pursuing the same course that he was, which went under the schooner's stern, and for him to have attempted to do the same might have brought him into collision with the other steamer. If this situation was really difficult at all, risk could have been avoided by reducing the Santuit's speed until the leading steamer was sufficiently ahead to give the Santuit more room.

It seems clear that the pilot persistently violated two important rules applicable to the situation (articles 22 and 23 [U. S. Comp. St. 1901, p. 2883), which direct that the vessel which is to keep out of the way shall avoid crossing ahead of the other vessel, and, if necessary, shall slacken her speed, stop, or reverse. The pilot persisted in keeping the steamer at full speed, and attempted to cross the schooner's bow, although it was his duty to avoid the schooner, and the risk of collision was manifest. Twice before the collision the master of the Santuit warned the pilot of the risk of collision, and suggested to him, first, that he had better starboard, to pass under the schooner's stern, and, next, that he had better stop the steamer; but the pilot would not assent to either suggestion, but persisted in keeping his course and speed. The collision resulted, and the master then and there charged the pilot

with responsibility for it. The learned judge of the District Court held that the collision resulted directly from the neglect of the pilot to exercise reasonably proper caution, and to us it appears that the facts could not possibly justify any other finding.

The proctors of the defendant Guy now urge in argument that, even if it be found that the steamer was in fault and answerable for the damage inflicted on the schooner, Guy is not to be held liable over to the steamer, for two reasons: First, that the pilot, being an employé of the steamer employed to take her into port, was bound to exercise only ordinary or reasonable skill and diligence, and that, being an experienced and skillful pilot, if he in good faith exercised his best judgment as the situation appeared to him, he is not liable to his employer. We do not think this contention is based on a sound foundation. In Davidson Steamship Co. v. United States, 205 U. S. 187–193, 27 Sup. Ct. 480, 483, 51 L. Ed. 764, it is said:

"There is an obligation on all persons to take the care which, in the ordinary circumstances of the case, a reasonable and prudent man would take, and the omission of that care constitutes negligence. It was said by Mr. Justice McLean delivering the opinion in Culbertson v. Shaw et al., 18 How. 584, 587, 15 L. Ed. 493: 'Where a steamer is about to enter a harbor, great caution is required. There being no usage as to an open way, the vigilance is thrown upon the entering vessel. Ordinary care, under such circumstances, will not excuse a steamer for a wrong done.'"

In Atlee v. Packet Company, 21 Wall. 389, 22 L. Ed. 619, Mr. Justice Miller, commenting on the duty of a pilot of a river steamer, made these observations:

"But the pilot of a river steamer, like the harbor pilot, is selected for his personal knowledge of the topography through which he steers his vessel. He must know where the navigable channel is, and its relation to all these external objects, especially at night."

A licensed pilot, enjoying the emoluments of compulsory pilotage, is quite in a different class from an ordinary employé. He assumes to have a skill and a knowledge in respect to navigation in the particular waters over which his license extends superior to and more to be trusted than that of the master, and from the moment he begins his duty he takes command and supersedes the master in respect to the navigation. His remuneration is fixed by law, and is proportionate to his responsibility, and his liability for neglect or want of skill must be in a similar proportion. Homer v. Compagnie Generale (C. C.) 63 Fed. 846.

It is also strongly urged by the proctors for the defendant Guy that he cannot be held answerable to the owner of the Santuit, because the settlement of the damages was made without notice to him, and no notice was given to him that the libelant proposed to hold him for any claim. It is not denied on behalf of the defendant Guy that, where an employer has been held liable for damages occasioned by the neglect or misconduct of his employé, he can recover such damages over against his employé; but it is contended that to fix that right of recovery there must have been notice to the employé of the claim and of the proposed settlement. In this case the settlement between the owner of the schooner and the owner of the Santuit was made February 9, 1901. This suit against Guy and his associate pilots was entered November

10, 1902, a delay of one year and nine months. If the negligence of the defendant Guy caused the damage which the plaintiff's steamer was liable for, and if the steamer had been libeled, and the defendant had been notified and requested the owner to defend the suit, and a decree had been entered against the steamer, the defendant would have been answerable to the plaintiff in this case, not only for the damages recovered, but also for the costs and the counsel fees. Grand Trunk Railway v. Latham, 63 Me. 177. And when, as in this case, the plaintiff has settled without suit, and the amount of the damage is fully proved, and it appears that the plaintiff has settled by the payment of less than the actual damage, there is no reason why the defendant should not be answerable for the amount so paid. Smith v. Foran, 43 Conn. 244, 21 Am. Rep. 647.

The defense of want of notice and delay in asserting the plaintiff's claim against the defendant Guy for reimbursement is to be dealt with as any defense of want of notice, laches, or estoppel is treated when urged against a clear legal right of action. If the want of notice or delay has prejudiced the defendant, he is entitled to set up that injury in his defense, and whatever inference is proper to be drawn from failure to give notice of claim and delay in prosecuting it he is entitled to the advantage of. Without doubt, in this suit, the neglect of the pilot and the amount of the damage to the schooner must be established by full proof. There is no presumption of neglect as against the pilot in any respect from the fact that the settlement was made, and the failure to give notice of the claim and the delay in entering suit should make the court more exacting as to the proof. But when the neglect of the pilot has been fully and satisfactorily proved, and the amount of the damage established by proof, and it appears that the pilot has suffered no detriment in making his defense by reason of want of notice or delay, and that his situation has not been prejudiced, then we can see no ground for denying the libelant's right of recovery. Ordinarily, in a case in which mere silence has not misled another to his hurt, there can be no estoppel. In some cases the scattering by lapse of time of the witnesses who might testify in the defendant's behalf might prejudice his defense, and other difficulties caused by delay might injuriously prejudice him; but in this case no such elements are present. So far as the witnesses from the schooner are concerned, they testified with less bias against the pilot, for the reason that the damages have been paid and they no longer had any pecuniary interest in the result of this litigation.

The test as to whether the libelant's right of action has been lost by delay, where no statutory limitation is applicable, is whether the delay has been such as to prejudice the defendant Guy. The liability of all the members of the Pilot Association jointly was doubtful under the peculiar nature of their association, and the Supreme Court has ruled against it; but the liability of Guy, the pilot in charge, if his negligence was established, was one of the consequences of the collision obvious from the beginning, and, the claim being maritime in its nature, courts of admiralty apply to it their liberal remedies in furtherance of complete justice. Erie R. R. Co. v. Erie & Western Transportation Co., 204 U. S. 220–225, 27 Sup. Ct. 246, 51 L. Ed. 450.

The decree is reversed as to all the defendants except the defendant Franklin W. Guy, and as to him it is affirmed, except that interest on the principal amount of $3,175 is to be computed only from the date of filing the libel, November 10, 1902.

Decree modified.