## MEEHAN v. VALENTINE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 12. Argued November 11, 12, 1890.—Decided May 16, 1892.

One who lends a sum of money to a partnership under an agreement that he shall be paid interest thereon at all events, and shall also be paid one tenth of the yearly profits of the partnership business if those profits exceed the sum lent, does not thereby become liable as a partner for the debts of the partnership.

THIS was an action of assumpsit brought by Thomas J. Meehan, a citizen of Maryland, against John K. Valentine,

.executor of William G. Perry, both citizens of Pennsylvania, alleging Perry to have been a partner with Lawrence W. Counselman and Albert L. Scott, under the name of L. W. Counselman & Co., and counting on promissory notes of various dates from August 10, 1883, to November 25, 1884, signed by that firm, endorsed to the plaintiff, and amounting in all to about $10,000, with interest. The defendant denied that Perry was a partner in the firm.

At the trial, the plaintiff put in evidence the following agreement:

"L. W. Counselman.                    Albert L. Scott.

"Office of L. W. Counselman & Co., oyster and fruit packers, corner Philpot and Will streets.

"Baltimore, Md., March 15, 1880.

"For and in consideration of loans made and to be made to us by Wm. G. Perry, of Philadelphia, amounting in all to the sum of ten thousand dollars, for the term of one year from the date of said loans, we agree to pay to said Wm. G. Perry, in addition to the interest thereon, one tenth of the net profits over and above the sum of ten thousand dollars on our business for the year commencing May 1st, 1880, and ending May 1st, 1881, — i.e. if our net profits for said year's business exceed the sum of ten thousand dollars, then we are to pay to said W. G. Perry one tenth of said excess of profits over and above the said sum of ten thousand dollars; and it is further agreed that if our net profits do not exceed the sum of ten thousand dollars, then he is not to be paid more than the interest on said loan, the same being added to notes at the time they are given, which are to date from the time of said loans and payable one year from date.

"L. W. COUNSELMAN & Co."

Also the following endorsement thereon: "March 2, 1881. This contract and agreement is to continue one year longer on the same basis — i.e. from May 1st, 1881, until May 1st, 1882.                    L. W. COUNSELMAN & Co."

Also three further renewals of the agreement from year to year, the first of which was by letter, dated March 18, 1882, from L. W. Counselman & Co. to Perry, with the same heading as the original agreement, and saying : "We hereby renew the agreement made with you May 1, 1880, which is to the effect that we will guarantee you ten per cent interest upon loans amounting to $10,000, and that if the net profits of our business is over $10,000 for the year commencing May 1, 1882, and ending April 30th, 1883, we will in lieu of the ten per cent interest give you ten per cent of the profits. We have two propositions for partnership May 1st, and if we accept either we will then, if you desire, return your loan."

The other renewals, dated April 4, 1883, and March 15, 1884, were substantially like the original agreement of March 15, 1880, except that in the agreement of April 4, 1883, the rate of interest was specified as six per cent.

The plaintiff further offered in evidence six promissory notes, amounting in the aggregate to $10,600, given by the firm to Perry in the months of March, May and June, 1884.

The plaintiff also called Scott as a witness, who testified that the firm was composed of L. W. Counselman and himself; that it was engaged in "the fruit and vegetable packing and oyster business" in Baltimore; that Perry was in the stationery business in Philadelphia; that the $10,000 mentioned in the agreement was paid by him to the firm, receiving their notes for it, and remained in the business throughout, no part of it having been repaid; that from time to time he lent other sums to the firm, which were repaid; that he was an intimate friend of the witness and visited him every few weeks; that these visits were not specially connected with the business, though on such occasions Perry "usually went down to the place of business and talked business;" that he annually asked and received from the firm accounts of profit and loss; that the accounts showed an annual profit, which varied from year to year, amounting for the second year to $11,000 or $12,000; that it being then found difficult to tell at the end of the year exactly what the profits would be, it was agreed with Perry that he should thenceforth receive $1000

each year, leaving the final settlement until the whole business was settled up ; and that he received under the agreement about $1500 the first year and $1000 each subsequent year. On cross-examination, the witness stated that the firm made an assignment to the plaintiff for the benefit of creditors on April 30, 1885 ; that their liabilities were from $60,000 to $70,000, about half of which was with collateral security, and he did not know whether it had been paid out of such security ; that the assets realized less than $2000 ; that, so far as he knew, no dividend had been paid ; and, in regard to the $10,000 received from Perry, the witness testified as follows : " Q. Mr. Counselman and yourself did owe this $10,000 to the estate of Mr. Perry, did you ? A. They had my notes for it. Q. Did you or did you not owe it ? A. It was capital he had in the business the same as ours. We owed it to him. Of course we owed it to him if we did not lose it."

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, on the ground that there was no evidence to show that Perry was liable as a partner. The court so ruled, and ordered a nonsuit. 29 Fed. Rep. 276. The plaintiff duly excepted to the ruling, and sued out this writ of error.

*Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson* for plaintiff in error.

In *Baylis* v. *Travellers' Ins. Co.*, 113 U. S. 316, 321, this court says : " The right of trial by jury in the courts of the United States is expressly secured by the Seventh Article of Amendment to the Constitution, and Congress has, by statute, provided for the trial of issues of fact in cases by the court without the intervention of a jury, only when the parties waive their right to a jury by a stipulation in writing." And in *Marshall* v. *Hubbard*, 117 U. S. 415, it said, in effect, that it is the duty of the court to give to the party the benefit of every inference that could be fairly drawn from the evidence, written and oral ; and that it is only when the party is so given the benefit of every such inference, that could be fairly drawn from the evidence, that the court is justified in withdrawing the case from the jury.

We are, therefore, remitted to the question whether the evidence for the plaintiff, as disclosed by the record, was of such a conclusive character as that, after giving to the plaintiff the benefit of every inference that could be drawn from it, it was of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to grant the non-suit which was granted.

The original contract, and its extensions, gave Perry an interest in the profits as such. In this regard, the contracts were not a mere method of securing to him usurious interest, or of measuring his compensation. Taken by itself, this makes out a *prima facie* case of partnership.

The leading case on this point in this court is *Berthold* v. *Goldsmith*, 24 How. 536, which has ever since been recognized by this court and the other Federal courts as authority, and the leading one, upon the questions as to what tests guide in determining the question of partnership. In that case it was said: "Actual participation in the profits as principal, we think, creates a partnership as between the parties and third persons, whatever may be their intentions in that behalf, and notwithstanding the dormant partner was not expected to participate in the losses beyond the amount of the profits. Every man who has a share of the profits of a trade or business ought, also, to bear his share of the loss, for the reason that, in taking a part of the profits, he takes a part of the fund of the trade on which the creditor relies for payment. *Grace* v. *Smith*, 2 W. Bl. 998; *Waugh* v. *Carver*, 2 H. Bl. 235. Actual partnership, as between the creditor and the dormant partner, is considered by the law to subsist where there has been a participation in the profits, although the participant may have expressly stipulated with his associates against all the usual incidents of that relation. *Pond* v. *Pittard*, 3 M. & W. 357. That rule, however, has no application whatever to a case of service or special agency where the employé has no power as partner in the firm and no interest in the profits as property, but is simply employed as a servant or special agent, and is to receive a given sum out of the profits, or a portion of the same, as compensation for his services."

This case was decided in 1860, the same year in which the case of *Cox* v. *Hickman*, 8 H. L. Cas. 268, was decided, and although the court below seemed to regard that case as deciding that a participation in the profits as profits, as distinguished from a stipulation for their being paid as a means of measuring compensation, did not show a partnership, as held in *Berthold* v. *Goldsmith*, yet we do not see that it did so decide, or that the case is at all in conflict, for our purposes, with the case of *Berthold* v. *Goldsmith*.

The English case was one where the question was whether certain "scheduled creditors," (who were to be paid a share of such profits as should accrue from their debtor's business, under a deed creating a trustee,) should be deemed partners; and the House of Lords held that they were not made partners in the business; just as this court, stating the rule in the case already quoted from, says, that where the employé has no power as partner in the firm business, and no interest in the profits as profits, but is simply employed as a servant or agent, there the party receiving a share of the profits is not made a partner. But, aside from this, this court has, since the decision in *Cox* v. *Hickman*, recognized the accuracy of the opinion in *Berthold* v. *Goldsmith*. It is so recognized in the cases of *Seymour* v. *Freer*, 8 Wall. 202, 221; *Hunt* v. *Oliver*, 118 U. S. 211, 221.

In *Hackett* v. *Stanley*, 115 N. Y. 625, a partnership was held to arise out of a written contract in no material respects different from the one in the case at bar. See also *Richardson* v. *Hughitt*, 76 N. Y. 55; *Burnett* v. *Snyder*, 76 N. Y. 344; *Curry* v. *Fowler*, 87 N. Y. 33; *Cassidy* v. *Hall*, 97 N. Y. 159; *Clift* v. *Barrow*, 108 N. Y. 187.

See also *Parker* v. *Canfield*, 37 Connecticut, 250, where the facts are very similar to those in the case at bar.

For the decisions in Massachusetts see *Pratt* v. *Langdon*, 12 Allen, 544; *S. C.* 93 Am. Dec. 61; *Fitch* v. *Harrington*, 13 Gray, 468; *S. C.* 74 Am. Dec. 641; *Holmes* v. *Old Colony Railroad*, 5 Gray, 58; *Brigham* v. *Clark*, 100 Mass. 430.; *Getchell* v. *Foster*, 106 Mass. 42; *Pettee* v. *Appleton*, 114 Mass. 114.

For the rule in Ohio see *Wood* v. *Vallette*, 7 Ohio St. 172; *Farmers' Insurance Co.* v. *Ross*, 29 Ohio St. 429.

As to Maryland, see *Rowland* v. *Long*, 45 Maryland, 439.

*Wilson* v. *Edmonds*, 130 U. S. 472, in no degree conflicts with our present position, that being a case where the alleged contract of partnership did no more than secure to Edmonds 10 per cent interest on vouchers bought for him by his agent, Squires.

In *Hazard* v. *Hazard*, 1 Story, 371, (1840,) it was held that a partnership as to third persons might arise between the parties by mere operation of law, against the intention of the parties; whereas, as between the parties it would exist only when such is the actual intention of the parties. See also *Cheap* v. *Cramond*, 4 B. & Ald. 663; *Peacock* v. *Peacock*, 16 Ves. 49; *Ex parte Hamper*, 17 Ves. 403; *Ex parte Hodgkinson*, 19 Ves. 291; *Ex parte Langdale*, 18 Ves. 300; *Heskeith* v. *Blanchard*, 4 East, 44; *Muzzy* v. *Watson*, 10 Johns. 226; *Dob* v. *Halsey*, 16 Johns. 34; *S. C.* 8 Am. Dec. 293.

Thus it appears to be settled that the written contract entitling Perry to a share of the net profits, at least, makes out a *prima facie* case of partnership, and therefore entitled the plaintiff to introduce, as against Perry's estate, the declarations of his copartners, as is held in *Pleasants* v. *Fant*, 22 Wall. 116, 120, where it is said that "one of the most approved criteria of the existence of the partnership, in such cases, is the right to compel an account of profits in equity." In the case at bar such a result follows in equity, from the covenant in the written contract that Perry should have one-tenth of the net profits in excess of $10,000.

While it is true that, as between creditors and copartners, it is immaterial, as bearing upon the liability of secret partners to creditors, whether the creditors, when they give trust to the firm, knew of the partnership of the secret partner or not, and it is also immaterial as to whether the partners meant to make a partnership; yet it is also true, in cases like the present, that the question as to what was the intention of the partners, regarding the formation and existence of a partnership, is a material circumstance in the case. *Clift* v. *Barrow*, 108 N. Y. 92.

In view of this principle of law, as well as in view of all the

evidence which was withdrawn from the consideration of the jury by the court, it seems to us quite impossible to reach the conclusion that there was not error in the withdrawal of these questions of fact from the jury.

*Mr. Richard C. Dale* and *Mr. Samuel Dickson* (with whom was *Mr. Henry P. Brown* on the brief) for defendant in error.

Mr. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The granting of a nonsuit by the Circuit Court, because in its opinion the plaintiff had given no evidence sufficient to maintain his action, was in accordance with the law and practice of Pennsylvania prevailing in the courts of the United States held within that State, and is subject to the revision of this court on writ of error. *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24, 38–40. The real question in this case, therefore, is whether the evidence introduced by the plaintiff would have been sufficient to sustain a verdict in his favor.

The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits. *Ward* v. *Thompson,* 22 How. 330, 334.

Some of the principles applicable to the question of the liability of a partner to third persons were stated by Chief Justice Marshall in a general way as follows : " The power of an agent is limited by the authority given him ; and if he transcends that authority, the act cannot affect his principal ; he acts no longer as an agent. The same principle applies to partners. One binds the others so far only as he is the agent of the others." " A man who shares in the profit, although his name may not be in the firm, is responsible for all its debts." " Stipulations [restricting the powers of partners] may bind the partners, but ought not to affect those to whom they are unknown, and who trust to the general and well

established commercial law." _Winship_ v. _Bank of United States_, 5 Pet. 529, 561, 562. And the Chief Justice referred to _Waugh_ v. _Carver_, 2 H. Bl. 235; _Ex parte Hamper_, 17 Ves. 403, 412; and Gow on Partnership, 17.

How far sharing in the profits of a partnership shall make one liable as a partner has been a subject of much judicial discussion, and the various definitions have been approximate rather than exhaustive.

The rule formerly laid down, and long acted on as established, was that a man who received a certain share of the profits as profits, with a lien on the whole profits as security for his share, was liable as a partner for the debts of the partnership, even if it had been stipulated between him and his copartners that he should not be so liable; but that merely receiving compensation for labor or services, estimated by a certain proportion of the profits, did not render one liable as a partner. Story on Partnership, c. 4; 3 Kent Com. 25 note, 32–34; _Ex parte Hamper_, above cited; _Pott_ v. _Eyton_, 3 C. B. 32, 40; _Bostwick_ v. _Champion_, 11 Wend. 571, and 18 Wend. 175, 184, 185; _Burckle_ v. _Eckart_, 1 Denio, 337, and 3 N. Y. 132; _Denny_ v. _Cabot_, 6 Met. 82; _Fitch_ v. _Harrington_, 13 Gray, 468, 474; _Brundred_ v. _Muzzy_, 1 Dutcher (25 N. J. Law) 268, 279, 674. The test was often stated to be whether the person sought to be charged as a partner took part of the profits as a principal, or only as an agent. _Benjamin_ v. _Porteus_, 2 H. Bl. 590, 592; Collyer on Partnership (1st ed.) 14; Smith Merc. Law (1st ed.) 4; Story on Partnership, § 55.; _Loomis_ v. _Marshall_, 12 Conn. 69, 78; _Burckle_ v. _Eckart_, 1 Denio, 337, 341; _Hallet_ v. _Desban_, 14 La. Ann. 529.

Accordingly, this court, at December term, 1860, decided that a person employed to sell goods under an agreement that he should receive half the profits, and that they should not be less than a certain sum, was not a partner with his employer. "Actual participation in the profits as principal," said Mr. Justice Clifford in delivering judgment, "creates a partnership as between the parties and third persons, whatever may be their intentions in that behalf, and notwithstanding the dormant partner was not expected to participate in the loss beyond the

amount of the profits," or " may have expressly stipulated with his associates against all the usual incidents to that relation. That rule, however, has no application whatever to a case of service or special agency, where the employé has no power as a partner in the firm and no interest in the profits, as property, but is simply employed as a servant or special agent, and is to receive a given sum out of the profits, or a proportion of the same, as a compensation for his services." *Berthold* v. *Goldsmith*, 24 How. 536, 542, 543. See also *Seymour* v. *Freer*, 8 Wall. 202, 215, 222–226; *Beckwith* v. *Talbot*, 95 U. S. 289, 293; *Edwards* v. *Tracy*, 62 Penn. St. 374; *Burnett* v. *Snyder*, 81 N. Y. 550, 555.

Mr. Justice Story, at the beginning of his Commentaries on Partnership, first published in 1841, said: " Every partner is an agent of the partnership; and his rights, powers, duties and obligations are in many respects governed by the same rules and principles as those of an agent. A partner, indeed, virtually embraces the character both of a principal and of an agent. So far as he acts for himself and his own interest in the common concerns of the partnership, he may properly be deemed a principal; and so far as he acts for his partners he may as properly be deemed an agent. The principal distinction between him and a mere agent is, that he has a community of interest with the other partners in the whole property and business and responsibilities of the partnership; whereas an agent, as such, has no interest in either. Pothier considers partnership as but a species of mandate, saying, *Contractus societatis, non secus ac contractus mandati.*" Afterwards, in discussing the reasons and the limits of the rule by which one may be charged as a partner by reason of having received part of the profits of the partnership, Mr. Justice Story observed that the rule was justified, and the cases in which it had been applied reconciled, by considering that " a participation in the profits will ordinarily establish the existence of a partnership between the parties in favor of third persons, in the absence of all other opposing circumstances," but that it is not " to be regarded as anything more than mere presumptive proof thereof, and therefore liable to be repelled and overcome by other circumstances, and not as

of itself overcoming or controlling them;" and therefore that "if the participation in the profits can be clearly shown to be in the character of agent, then the presumption of partnership is repelled." And again: "The true rule, _ex æquo et bono_, would seem to be that the agreement and intention of the parties themselves should govern all the cases. If they intended a partnership in the capital stock, or in the profits, or in both, then that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons." Story on Partnership, §§ 1, 38, 49.

Baron Parke (afterwards Lord Wensleydale) appears to have taken much the same view of the subject as Mr. Justice Story. Both in the Court of Exchequer, and in the House of Lords, he was wont to treat the liability of one sought to be charged as a dormant partner for the acts of the active partners as depending on the law of principal and agent. _Beckham_ v. _Drake_ (1841) 9 M. & W. 79, 98; _Wilson_ v. _Whitehead_ (1842) 10 M. & W. 503, 504; _Ernest_ v. _Nicholls_ (1857) 6 H. L. Cas. 401, 417; _Cox_ v. _Hickman_ (1860) 8 H. L. Cas. 268, 312. And in _Cox_ v. _Hickman_ he quoted the statements of Story and Pothier from Story on Partnership, § 1, above cited.

In that case, two merchants and copartners, becoming embarrassed in their circumstances, assigned all their property to trustees, empowering them to carry on the business, and to divide the net income ratably among their creditors, (all of whom became parties to the deed,) and to pay any residue to the debtors, the majority of the creditors being authorized to make rules for conducting the business or to put an end to it altogether. The House of Lords, differing from the majority of the judges who delivered opinions at various stages of the case, held that the creditors were not liable as partners for debts incurred by the trustees in carrying on the business

under the assignment. The decision was put upon the ground that the liability of one partner for the acts of his copartner is in truth the liability of a principal for the acts of his agent; that a right to participate in the profits, though cogent, is not conclusive, evidence that the business is carried on in part for the person receiving them; and that the test of his liability as a partner is whether he has authorized the managers of the business to carry it on in his behalf. *Cox* v. *Hickman*, 8 H. L. Cas. 268, 304, 306, 312, 313; *S. C. nom. Wheatcroft* v. *Hickman*, 9 C. B. (N. S.) 47, 90, 92, 98, 99.

This new form of stating the general rule did not at first prove easier of application than the old one; for in the first case which arose afterwards one judge of three dissented; *Kilshaw* v. *Jukes*, 3 B. & S. 847; and in the next case the unanimous judgment of four judges in the Common Bench was reversed by four judges against two in the Exchequer Chamber. *Bullen* v. *Sharp*, 18 C. B. (N. S.) 614, and L. R. 1 C. P. 86. And, as has been pointed out in later English cases, the reference to agency as a test of partnership was unfortunate and inconclusive, inasmuch as agency results from partnership rather than partnership from agency. Kelly, C. B. and Cleasby, B., in *Holme* v. *Hammond*, L. R. 7 Ex. 218, 227, 233; Jessel, M. R., in *Pooley* v. *Driver*, 5 Ch. D. 458, 476. Such a test seems to give a synonym, rather than a definition; another name for the conclusion, rather than a statement of the premises from which the conclusion is to be drawn. To say that a person is liable as a partner, who stands in the relation of principal to those by whom the business is actually carried on, adds nothing by way of precision, for the very idea of partnership includes the relation of principal and agent.

In the case last above cited, Sir George Jessel said: "You cannot grasp the notion of agency, properly speaking, unless you grasp the notion of the existence of the firm as a separate entity from the existence of the partners; a notion which was well grasped by the old Roman lawyers, and which was partly understood in the courts of equity." And in a very recent case the Court of Appeals of New York, than which no court

has more steadfastly adhered to the old form of stating the rule, has held that a partnership, though not strictly a legal entity as distinct from the persons composing it, yet being commonly so regarded by men of business, might be so treated in interpreting a commercial contract. *Bank of Buffalo* v. *Thompson*, 121 N. Y. 280.

In other respects, however, the rule laid down in *Cox* v. *Hickman* has been unhesitatingly accepted in England, as explaining and modifying the earlier rule. *Re English & Irish Society*, 1 Hem. & Mil. 85, 106, 107; *Mollwo* v. *Court of Wards*, L. R. 4 P. C. 419, 435; *Ross* v. *Parkyns*, L. R. 20 Eq. 331, 335; *Ex parte Tennant*, 6 Ch. D. 303; *Ex parte Delhasse*, 7 Ch. D. 511; *Badeley* v. *Consolidated Bank*, 38 Ch. D. 238. See also *Davis* v. *Patrick*, 122 U. S. 138, 151; *Eastman* v. *Clark*, 53 N. H. 276; *Wild* v. *Davenport*, 19 Vroom (48 N. J. Law) 129; *Seabury* v. *Bolles*, 22 Vroom (51 N. J. Law) 103, and 23 Vroom (52 N. J. Law) 413; *Morgan* v. *Farrel*, 58 Conn. 413.

In the present state of the law upon this subject, it may perhaps be doubted whether any more precise general rule can be laid down than, as indicated at the beginning of this opinion, that those persons are partners, who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions. If they do this, the incidents or consequences follow, that the acts of one in conducting the partnership business are the acts of all; that each is agent for the firm and for the other partners; that each receives part of the profits as profits, and takes part of the fund to which the creditors of the partnership have a right to look for the payment of their debts; that all are liable as partners upon contracts made by any of them with third persons within the scope of the partnership business; and that even an express stipulation between them that one shall not be so liable, though good between themselves, is ineffectual as against third persons. And participating in profits is presumptive, but not conclusive, evidence of partnership.

In whatever form the rule is expressed, it is universally held

that an agent or servant, whose compensation is measured by a certain proportion of the profits of the partnership business, is not thereby made a partner, in any sense. So an agreement that the lessor of a hotel shall receive a certain portion of the profits thereof by way of rent does not make him a partner with the lessee. *Perrine* v. *Hankinson*, 6 Halst. (11 N. J. Law) 181; *Holmes* v. *Old Colony Railroad*, 5 Gray, 58; *Beecher* v. *Bush*, 45 Michigan, 188. And it is now equally well settled that the receiving of part of the profits of a commercial partnership, in lieu of or in addition to interest, by way of compensation for a loan of money, has of itself no greater effect. *Wilson* v. *Edmonds*, 130 U. S. 472, 482; *Richardson* v. *Hughitt*, 76 N. Y. 55; *Curry* v. *Fowler*, 87 N. Y. 33; *Cassidy* v. *Hall*, 97 N. Y. 159; *Smith* v. *Knight*, 71 Illinois, 148; *Williams* v. *Soutter*, 7 Iowa, 435, 446; *Boston & Colorado Smelting Co.* v. *Smith*, 13 R. I. 27; *Mollwo* v. *Court of Wards*, and *Badeley* v. *Consolidated Bank*, above cited.

In some of the cases most relied on by the plaintiff, the person held liable as a partner furnished the whole capital on which business was carried on by another, or else contributed part of the capital and took an active part in the management of the business. *Beauregard* v. *Case*, 91 U. S. 134; *Hackett* v. *Stanley*, 115 N. Y. 625, 627, 628, 633; *Pratt* v. *Langdon*, 12 Allen, 544, and 97 Mass. 97; *Rowland* v. *Long*, 45 Maryland, 439. And in *Mollwo* v. *Court of Wards*, above cited, after speaking of a contract of loan and security, in which no partnership was intended, it was justly observed: "If cases should occur where any persons, under the guise of such an arrangement, are really trading as principals, and putting forward, as ostensible traders, others who are really their agents, they must not hope by such devices to escape liability; for the law, in cases of this kind, will look at the body and substance of the arrangements, and fasten responsibility on the parties according to their true and real character." L. R. 4 P. C. 438. But in the case at bar no such element is found.

Throughout the original agreement and the renewals thereof, the sum of $10,000 paid by Perry to the partnership, and for

which they gave him their promissory notes, is spoken of as a loan, for which the partnership was to pay him legal interest at all events, and also pay him one tenth of the net yearly profits of the partnership business if those profits should exceed the sum of $10,000. The manifest intention of the parties, as apparent upon the face of the agreements, was to create the relation of debtor and creditor, and not that of partners. Perry's demanding and receiving accounts and payments yearly was in accordance with his right as a creditor. There is nothing in the agreement itself, or in the conduct of the parties, to show that he assumed any other relation. He never exercised any control over the business. The legal effect of the instrument could not be controlled by the testimony of one of the partners to his opinion that "it was capital he had in the business the same as ours; we owed it to him; of course we owed it to him if we did not lose it."

Upon the whole evidence, a jury would not be justified in inferring on the part of Perry, either " actual participation in the profits as principal," within the rule as laid down by this court in *Berthold* v. *Goldsmith;* or that he authorized the business to be carried on in part for him or on his behalf, within the rule as stated in *Cox* v. *Hickman,* and the later English cases. There being no partnership, in any sense, and Perry never having held himself out as a partner to the plaintiff or to those under whom he claimed, the Circuit Court rightly ruled that the action could not be maintained. *Pleasants* v. *Fant,* 22 Wall. 116; *Thompson* v. *Toledo Bank,* 111 U. S. 529.

*Judgment affirmed.*

MR. JUSTICE BROWN, not having been a member of the court when this case was argued, took no part in its decision.