D. C.]                    Statement of the Case.

# WILKINSON *v.* LINCOLN.

PARTNERSHIP; CONTRACTS.

A partnership is not created by an agreement between a builder and another person whereby the latter is to purchase the equity in and take title to a tract of land upon which the builder is to erect twenty-two houses, eleven of which, when completed and all indebtedness paid, are to be conveyed to the builder, or to purchasers found by him, although in execution of the agreement a note secured by mortgage on the property given to procure a building loan is signed by both parties, there being neither a joint investment nor a joint division of profits, but merely an agreement that the builder shall receive, as consideration for the erection of the houses with money procured through the loan, one half of the lots and houses encumbered by their proportionate share of the loan (distinguishing *Northwest Eckington Improv. Co. v. Campbell,* 28 App. D. C. 483, and *Campbell* v. *Northwest Eckington Improv. Co.* 36 App. D. C. 149; s. c. 229 U. S. 561); so that for materials ordered by the builder and used in the construction of the houses, without the knowledge of the other party, the latter is not liable.

No. 2990.    Submitted February 6, 1917.    Decided March 6, 1917.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on an agreed statement of facts in an action to recover the value of materials used in the construction of houses on land of the defendant.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action at law to recover the value of materials furnished by appellee, S. Dana Lincoln, trading as the National Mortar Company, plaintiff below, in the construction of houses upon land owned by defendant, Oscar Wilkinson.

The following statement of fact was prepared by the court below:

"The evidence shows that one McCormick, a builder of

Vol. XLVI.—13.

houses, came to the defendant and told him of a piece of land which could be bought for a certain price, and proposed that the defendant buy it and take title to it, and that he, McCormick, should erect upon it twenty-two houses, and that when they were completed and the indebtedness all paid the defendant should convey to McCormick, or to purchasers found by him, eleven of the houses, keeping the other eleven for himself. A cash payment of $1,000 was necessary to secure the land, and the defendant allowed McCormick to dispose of two pieces of real estate belonging to the defendant, by which $800 was raised, and paid $200 in cash, thus making up the $1,000, McCormick contributing no money to the purchase of the land. Title was taken in the name of the defendant and a mortgage was given to secure a building loan, the note being signed by both the defendant and McCormick. McCormick went on and erected the buildings, finishing all but two of them, and the defendant conveyed to purchasers secured by McCormick eleven of the completed houses, leaving for himself nine completed houses and two uncompleted. Then McCormick left the District. The plaintiff had furnished materials for the construction of the houses and the materials were actually used therein. They were procured by McCormick on his own credit, and the plaintiff when he furnished the materials had no knowledge that the defendant had any connection with the matter. Soon after McCormick left, the plaintiff heard that the defendant was a partner of McCormick in the enterprise, and called upon the defendant to pay for the materials. The plaintiff's agent testified that the defendant said he guessed he would have to pay for the materials. This the defendant denied. The plaintiff's agent also testified that when he called upon the defendant for payment he told the defendant that he had been informed that the defendant was a partner of McCormick and that the defendant did not deny it, saying that he supposed that he would have to pay, but that the plaintiff must give him time. The two houses that were left uncompleted were afterwards completed by the defendant at his own expense. The building loan was negotiated by McCormick.

"When asked to explain why he consented to convey the eleven houses to the purchasers secured by McCormick at a time when McCormick had not finished all the houses, the defendant testified, 'He assured me that everything was all right; that he had these deals on hand and if I kept him from making this sale it would interfere with his payments.'

"The defendant while upon the stand was asked this question by his own counsel: 'Referring to this agreement you had with McCormick, with respect to your being charged with any expense in addition to furnishing the land, what have you to say about that?' And he made this answer: 'I had nothing to do with any further expense whatever.' The defendant also testified that by the agreement between himself and McCormick each was to be entitled to 'the equity of redemption' in eleven of the completed houses. In reply to a question by plaintiff's counsel, defendant testified as follows: Q. And according to this original understanding (with McCormick) he was to have half and you half? A. Yes, half of the number of houses after all completed and the indebtedness all paid."

The foregoing statement of fact was approved by counsel for both parties with an agreement that there was no issue of fact for submission to the jury. Counsel on both sides moved the court for an instructed verdict. The court, holding that defendant and McCormick were partners, granted the motion of plaintiff, and from the judgment thereon defendant has appealed.

*Mr. A. E. L. Leckie, Mr. Joseph W. Cox,* and *Mr. Joseph T. Sherier* for the appellant.

*Mr. Bates Warren* and *Mr. W. H. Sholes,* for the appellee, in their brief cited:

Greenl. Ev. Section 120; *Buetell* v. *Magone,* 157 U. S. 154; *Empire State Cattle Co.* v. *Atchison, T. & S. F. R. Co.*; *Meehan* v. *Valentine,* 145 U. S. 619; *Brotherton* v. *Gilchrist,* 115 Am. St. Rep. 400; *Spencer* v. *Jones,* 71 Am. St. Rep. 870; *Jones* v. *Davies,* 72 Am. St. Rep. 354; *Campbell* v. *Northwest*

*Eckington Improv. Co.* 28 App. D. C. 483; 36 App. D. C. 149, and 229 U. S. 561; *Clark* v. *Sidway,* 142 U. S. 682; *Roland* v. *Long,* 45 Md. 439; *Parker* v. *Canfield,* 37 Conn. 250; *Cathron* v. *Marmaduke,* 60 Tex. 370; *Good* v. *McCartney,* 10 Tex. 195; *Manhattan Press Co.* v. *Sears,* 45 N. Y. 797.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is clear that the single question here, as below, is whether or not a partnership existed. Before a partnership legally can be implied from a given state of fact it must appear that the parties were associated in an enterprise for their common benefit, each contributing property or services, with a community of interest in the profits. *Ward* v. *Thompson,* 22 How. 330, 16 L. ed. 249; *Meehan* v. *Valentine,* 145 U. S. 611, 36 L. ed. 835, 12 Sup. Ct. Rep. 972. In the latter case, it was held that where one lends money to another to invest in business, under an agreement that he shall be paid interest thereon in any event, and in addition one tenth of the profits of the business if the profits exceed the sum loaned, there is not a partnership. Before the legal ·inference of a partnership can be indulged, there must always exist the fundamental element of a division of profits. For example, it is not a sharing in the profits of a joint business as a partner, to receive for a given service a stipulated share of the profits.

The rule is clearly stated in *Fechteler* v. *Palm Bros. & Co.* 66 C. C. A. 336, 133 Fed. 462, by Mr. Justice Lurton, as follows: "But in every phase of the question as to the cogency of evidence of a participation in profits it has been understood that the person sought to be charged as a partner must have an interest in profits as profits. Thus, it is said by Judge Story in section 49 of his work upon Partnership, adopting the view of Collier upon Partnerships, 'that in order to constitute a communion of profits between the parties, which shall make them partners, the interest in the profits must be mutual; that is, each person must have a specific interest in the profits as a principal trader.' *Meehan* v. *Valentine,* 145 U. S. 611, 619, 623,

36 L. ed. 835, 840, 841, 12 Sup. Ct. Rep. 972. Hence it always has been the rule that if you could show that the participation in profits was not a sharing in profits as a principal,—in profits as profits of a joint business,—but under an agreement by which a sum was to be received which should be equal to a definite proportion of the profits as a compensation for services or rent, or money advanced as a loan, there will be no liability as a partner. Such an arrangement would contradict the notion of a partnership, for there would be no participation in profits as a principal, no receipt of profits as profits. Upon the contrary, the relation of creditor would be made out; the amount of the debt being a sum of money estimated by a certain proportion of the profits, as a mere measure or yardstick. 'The way in which the profits are to be participated in is the essence of the whole matter.' Cotton, L. J., in *Ex parte Tenant,* L. R. 6 Ch. Div. 303, 316, 37 L. T. N. S. 284, 25 Week. Rep. 854, 19 Eng. Rul. Cas. 385."

In the present case, there was neither a joint investment nor a joint division of profits. The division of the houses amounted to nothing more in effect than an agreement by defendant to furnish the ground, place a building loan thereon, and give Mc-Cormick, as consideration for the erection of the houses with the money procured through the loan, one half of the lots and houses, encumbered by their proportionate share of the loan. There was no division of profits after liquidation of indebtedness resulting from a joint investment and disposition of the property.

McCormick invested nothing in the enterprise except his labor and skill. True, he signed the building loan note; but the note was secured by the trust covering the property, one half of which was to be turned over to him. This incident does not affect the relation of the parties. It, at most, only tended to establish a community of interest in the property, but not in the profits. There was no agreement even to share profits and losses, and neither party could have appropriated any portion of the returns

or proceeds for further investment on their joint account. There was no division of profits contemplated, but a division of the encumbered property. The whole question of profit or loss depended upon the manner in which each party handled his share after the division which was to terminate the contract. McCormick had no interest in the profits as profits, but an agreed proportion of the property, with profit or loss as the case might be, as compensation for his labor and services. "A community of interest in land does not of itself constitute a partnership; nor does a mere community of interest in personal estate. There must be some joint adventure, and an agreement to share in the profit of the undertaking. * * * 'If a man stipulates that, as the reward of his labor, he shall have, not a specific interest in the business, but a given sum of money even in proportion to a given *quantum* of the profits, that will not make him a partner.'" *Loomis* v. *Marshall,* 12 Conn. 69, 77, 30 Am. Dec. 596.

In *Shaeffer* v. *Blair,* 149 U. S. 248, 37 L. ed. 721, 13 Sup. Ct. Rep. 856, Shaeffer held options on certain lands which it was agreed should be purchased in Shaeffer's name and turned over to Blair, who was to furnish the purchase money and necessary expense to put the land in condition for sale, and be repaid out of the net proceeds of the sales. Shaeffer was to lay out, improve, and sell the lands, for which he was to receive a commission of 5 per cent on the gross sales, the balance to be deposited to Blair's account until he was repaid in full for the moneys he had advanced. All contracts of sale were to be approved by Blair, and when he had been fully reimbursed for the money advanced, the balance of the property should be divided, 60 per cent to Blair and 40 per cent to Shaeffer. The court, holding that the contract did not create a partnership, said: "There may doubtless be a partnership in the purchase and the resale of lands, as of any other property. But this contract contains no expression to indicate an intention of the parties to become partners. It does not authorize either party, without the consent of the other, to sell any property, or to contract any debts, on behalf of both. If the enterprise proves unsuccessful, the contract does not provide or contemplate that Shaeffer shall share the loss.

* * * There is great difficulty, therefore, in the way of con-struing this contract as creating a partnership between Blair and Shaeffer."

In the case of *Demarest* v. *Koch,* 31 N. Y. S. R. 399, 9 N. Y. Supp. 726, affirmed in 129 N. Y. 218, 29 N. E. 296, the facts were very similar to the present case, except that the contract provided as an alternative to dividing the property that it might be sold at a price satisfactory to both parties, "it being the in-tent of the parties to equally divide any profits which may be realized by the sale of said buildings." A carpenter sued to recover for work done on the buildings, the question involved being whether there was a partnership. The court, answering in the negative, said: "The agreement of May 22, 1884, was nothing more than an executory contract of sale, Spaulding agreeing, upon Koch's payment as provided for, to convey to the latter, upon construction, either of two certain houses and lots somewhat encumbered. The fact that Koch had an option to receive one half the sum received for the houses and lots upon a sale, if the parties determined to sell,—for the sale was only to be at a price satisfactory to both parties,—in no way affected the nature of the contract. The stated intent to divide profits did not refer to a division of profits as such. It is qualified by that which precedes it as to a division of the sum received on a sale. The contract in no way affected the relations of the par-ties as to third persons."

In *Furber* v. *Page,* 143 Ill. 622, 32 N. E. 444, a case present-ing a question closely analogous to the one before us, the court held (quoting from the syllabus): "An agreement between two persons to purchase a tract of land and erect buildings thereon for their joint benefit does not necessarily give rise to the pre-sumption that they are partners. As such transaction is equally consistent with the relation of tenants in common, the parties thereto may or may not be held to be partners, depending, as between themselves, upon their intention, legally ascertained. Where land is bought by two persons, taking the title in the name of one, who is to advance the entire purchase money, the other to devote his services as an architect in the erection of

buildings thereon, and the first to borrow money on the property with which to pay the price and cost of the buildings, and it is agreed that the grantee shall hold the title for them jointly until the buildings are completed, and then convey the undivided half thereof to the other, subject to the encumbrance thereon, this, in the absence of proof of any other or inconsistent intention, will fail to show the existence of a partnership as to the enterprise."

Thus, it will be observed that even though there be a joint ownership or community of interest in the property, in the absence of an agreement for the division of the profits as profits, or authority for one of the parties to further invest on joint account the proceeds derived from a sale of community property with an ultimate division of profits as profits, there is not a partnership. A rule less stringent might well result in the establishment of an implied partnership from the relation of tenants in common, or from an executory contract of sale. When the interest in the property amounts to nothing more than a stipulated portion to be conveyed to one of the parties, or a specified amount equal to a fixed percentage of the profits derived therefrom to be paid to one of the parties on completion of the enterprise, even though the property be the result of joint investment, it will not be held sufficient to support the legal implication of a partnership, unless it appears to have been the intention of the parties to establish that relation.

Strong reliance is placed by counsel for appellee on the case of *Northwest Eckington Improv. Co.* v. *Campbell,* 28 App. D. C. 483; (*Campbell* v. *Northwest Eckington Improv. Co.*) 36 App. D. C. 149; 229 U. S. 561, 57 L. ed. 1330, 33 Sup. Ct. Rep. 796. In that case, it was a joint adventure, including the purchase, development, and sale of the property. Campbell, because of his skill as a builder, was to take charge of the erection of the houses and the development of the property generally, the contract stipulating that "in the borrowing of the money that may be needed in developing said enterprise he is to use his credit by joining the other parties to this contract in the making or indorsing of any notes that may be required in negotiating

the necessary loans for the making of said improvements and in paying off the loan of $32,000 now due on said property." The contract further stipulated that "in return for said undertaking on said Campbell's part he is to become possessed of an undivided one-third interest in said property." In pursuance of this agreement a deed in fee to one third of the property was executed to Campbell shortly after the commencement of development work under the contract. It was a continuing development scheme. Even the proceeds derived from the sale of one piece of property could have been used for the improvement of another. Money derived from one source could be invested in further development for the joint benefit of all the parties. Under the contract Campbell was empowered to borrow money and incur obligations for carrying out the enterprise upon the joint credit of all the parties. This was properly held to constitute a partnership. But unlike the present case, there was no specified amount which Campbell was to receive as compensation for his skill and services. He was to receive one third of the resulting profits as profits when the development scheme terminated. The same is true of the other cases cited by counsel and the learned justice below in his opinion. They all involve a community of interest in the profits as profits, and possess essentials of a legal partnership not to be found in the present case.

The judgment is reversed with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*