**FAHEY v. SAPIO et al.**

Circuit Court of Appeals, Fifth Circuit.
February 6, 1929.

No. 5371.

Mart H. Royston and Frank S. Anderson, both of Galveston, Tex., for appellant.

Elmo Johnson, of Galveston, Tex., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal by David Fahey from a judgment by which he was adjudged a bankrupt.

A private bank, which was operated under the firm name of "Ed McCarthy & Co., Bankers," became insolvent, and Ed McCarthy was adjudged a bankrupt. The creditors of the bank filed a petition in bankruptcy against Fahey on the ground that he was a partner in the banking business of McCarthy & Co., was insolvent, and had committed an act of bankruptcy by transferring his property with intent to hinder, delay, and defraud his creditors. The judgment appealed from was based on the finding of fact that, as alleged in the petition against him, Fahey was a partner in the banking business. The liabilities of the bank so greatly exceeded its assets as to cause Fahey to be insolvent if he was liable as such partner for its debts, and if he was so liable it is conceded that he was properly adjudged a bankrupt. On the other hand, if he was not liable as a partner for the bank's debts, he was solvent, and the petition in bankruptcy filed against him by the bank's creditors should have been dismissed. Therefore, the only question before us is whether or not Fahey was McCarthy's partner in the banking business of McCarthy & Co.

The bank was opened in 1900, with a capital not in excess of $10,000 and its business was continued under the name of "Ed McCarthy & Co., Bankers," until its failure in October of 1926. Fahey was one of its earliest depositors, and in about three years after it was established he and McCarthy became partners in the real estate business under the firm name of Fahey & McCarthy, and that partnership likewise continued in existence until the failure of the bank. The real estate business was financed entirely with the bank's funds. Fahey was in exclusive charge of that business. He had an individual account and a partnership account at the bank, and his checks upon either account were honored without question, regardless of whether money was on deposit to meet them. In this way large overdrafts were created, and were allowed to stand for years at a time. The highest overdraft shown was about $50,000.

No interest was ever paid on the overdrafts of the firm, and practically none on the overdrafts in Fahey's individual account, notwithstanding that interest at the legal and prevailing rate would have amounted to about $28,000. All real estate bought was paid for in cash, and the overdraft was allowed to stand until it was made good by sales of real estate or the proceeds from the real estate business. After paying the bank, all profits were divided equally between Fahey and McCarthy. During its entire existence the bank was run with practically no profit. McCarthy testified that he received no profit from the bank, and that when he complained to Fahey about this method of doing business, Fahey replied that it made no difference, as he and McCarthy owned the bank. The real estate office was in the same building as the bank. Fahey was constantly in the bank, and it was at his instance that its location was changed. Evidence for appellees was to the effect that Fahey had a key to the bank from the beginning, and was constantly in it consulting about its affairs and passing upon applications for loans; that he solicited deposits and assured customers that the financial condition of the bank was good; that on the day before it finally closed its doors, and when a run was being made on it by depositors, he raised and put in it $46,500 in an effort to save it from failure. Fahey admitted that he had a key, but stated that he had had it only a few days; admitted that he was frequently in the bank, but only for the purpose of making deposits or transacting business for his firm; and denied that he consulted with any one in the bank about its condition or business, solicited deposits, or tried to influence cus-

tomers not to withdraw their deposits. He admitted making a loan of $46,500 to the bank on the day before it failed. He testified that McCarthy agreed to secure him by a deed of trust of his interest in real estate owned by the real estate firm. McCarthy denied that the loan was to be secured, and the facts are that the deed of trust was not executed, and that Fahey filed his claim in McCarthy's bankruptcy proceeding as an unsecured creditor. The testimony in the case was taken in the presence of the district judge.

■ Persons who carry on a joint business for their common benefit, and who own and share the profits thereof, are partners. "Participating in profits is presumptive, but not conclusive, evidence of partnership." Meehan v. Valentine, 145 U. S. 611, 12 S. Ct. 972, 36 L. Ed. 835. As the district judge heard the witnesses, his conclusion upon conflicting testimony is entitled to great weight.

■ It is apparent that the trial court rejected Fahey's testimony in so far as it was in conflict with the testimony of other witnesses, and we are not prepared to say that it was error to do this. Accepting as true the testimony of the witnesses for appellees and of McCarthy, who was called by the court of its own motion as a witness, it can hardly be doubted that Fahey and McCarthy used the bank as an adjunct to their real estate partnership business. If the bank was an independent concern, and Fahey had no influence over it, it is most unreasonable to believe that it would have extended to him unlimited credit and allowed him to take its money and keep it without interest for an unlimited time; or that McCarthy, if he was the sole owner of the bank, would agree to put up Fahey's share of the money in the real estate partnership and allow him an equal division of profits. On the other hand, it was not likely that Fahey as a prudent business man would have made a loan as large as he did make without security to a bank in failing circumstances in which he had no financial interest. It is only upon the theory that Fahey and McCarthy were both interested as partners in the bank, as well as in the real estate business, that a reasonable explanation can be made of the use of the funds of the bank for their joint benefit. Upon that theory it is not difficult to understand why Fahey was active in the management of the bank, and was willing to put up his money without security to prevent the bank's failure.

The judgment is affirmed.