## HUTESON v. UNITED STATES.
### No. 4935.

Circuit Court of Appeals, Seventh Circuit.
Oct. 18, 1933.

Rehearing Denied Jan. 8, 1934.

William F. Waugh and J. J. Goshkin, both of Chicago, Ill., for appellant.

Val Nolan, U. S. Atty., and George R. Jeffrey, both of Indianapolis, Ind.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

That Dozier and O'Keefe were properly convicted can not well be doubted, and appellant does not controvert that fact. He insists, however, that there is no material evidence in the record to support the judgment against him.

The evidence shows that Dozier and O'Keefe had known appellant rather intimately for some time prior to the transactions at Indianapolis. They had both been in his employ in Toronto, Ontario, under a plan for the sale of lots quite like the one carried out in Indianapolis. They had also been in the employ of one Arnold at Buffalo in conducting a sale of lots in that city, in all respects the same as at Indianapolis, and appellant had been an associate of Arnold in that undertaking. The evidence further shows that appellant conducted like sales in other parts of the United States, and it is a significant fact that many of the parties who assisted Dozier and O'Keefe in conducting the Indianapolis sale were former employees of appellant in the same business.

When Dozier and O'Keefe were contemplating the sale at Indianapolis they were in the employ of appellant at Toronto, Ontario, and appellant advanced $700 for their use in paying expenses in investigating and establishing the Indianapolis sale which was apparently established and operated by Dozier and O'Keefe under the firm name and style of Indiana Estates Company. They, however, had no money with which to finance the sale, and according to Dozier's testimony appellant "put in" $5,000 which constituted the capital for carrying on the business. Appellant does not deny that he advanced to Dozier and O'Keefe $5,700 on the Indianapolis project, but he claims that it was a mere loan to them, and that he had no other interest whatever in the project, and knew nothing whatever of its management and conduct. It is significant, however, that when these sums were advanced there was no note or other evidence of indebtedness taken, nor was there any agreement as to what rate of interest the obligation should bear nor as to when the money should be repaid. Appellant did not testify, but his co-defendants stated that after the money was received by them it was agreed between the three of them that he should receive fifty per cent. of the profits, and that Dozier and O'Keefe should share the other fifty per cent. in equal parts, and that appellant's one-half of the profits was considered as interest on the money which he had advanced. Before any profits were declared, the $5,700 was repaid to appellant, and thereafter he received one-half of all the profits in the aggregate of $6,950. The entire sale extended over a period of about five months.

In Meehan v. Valentine, 145 U. S. 611, 12 S. Ct. 972, 36 L. Ed. 835, the court stated that participation in profits was presumptive evidence of partnership, but that it did not constitute a conclusive presumption. It is true that appellant and his co-defendants testified that appellant was not a partner. That testimony, however, was likewise not conclusive upon the court, and thereupon it became the duty of the court to consider both the presumption of partnership and the testimony of Dozier and O'Keefe, together with all the other material evidence in the cause, in determining what interest, if any, appellant had in the Indianapolis business. It certainly can not be denied that the presumption arising from appellant's extensive participation in the profits constitutes substantial evidence of his partnership in the business. Whether this presumption was outweighed by other evidence was a matter of fact to be determined by the trial court, and with that we are not concerned.

The court's finding in respect to partnership was not based alone on the presumption, for several circumstances tend quite strongly to support the presumption and to warrant the court in its conclusion. After the Indiana Estates Company had returned to appellant the $5,700 which he claimed was merely a loan, he came to Indianapolis and assumed quite a dictatorial attitude in the management of the business. He strenuously objected to an increase in the salary of Dozier and O'Keefe from $75 to $100 a week, stating that if they were taking $100 a week he should be taking $200. He also objected to the refund of purchase money to women purchasers who claimed they were not financially able to carry out their contracts, on the ground that they were in reality able to do so and were misrepresenting their financial conditions. He delivered a sales lecture for the Indiana Estates Company at its branch office in Kokomo. The record discloses that it was understood by the managers of the Indianapolis company that appellant was not to be introduced to anyone

while he was there. O'Keefe testified that the Indianapolis concern was to pay appellant 100% interest on the money which he advanced them, but he did not know how long the agreement was to continue nor when it was made, except that it was not made until the money had been advanced for some time. The money was returned to appellant within approximately two months after Dozier and O'Keefe received it, and figuring on a basis of annual interest, appellant received considerably more than 600% on his investment. We do not hold that such an agreement might not be valid and binding under certain circumstances, but we do hold that the trial court was not bound to believe that such an agreement ever existed under the circumstances presented by this case. The record further discloses that within a short time after the business at Indianapolis had ceased in December, after about five months duration, all the defendants met in California.

Dozier and O'Keefe testified that they did not wish to oppose removal from California to the Indiana jurisdiction, but for some unexplained reason it was opposed, and the defendants were present in person and by attorney. On an adverse ruling they appealed, and O'Keefe stated that appellant paid all attorneys' fees and the cost of the transcript on appeal.

We think there is substantial evidence to support the verdict and judgment.

█ Appellant raises a further question as to the admission of certain testimony of O'Keefe, and he says that the alleged error is covered by assignment 22 which is that the court erred in refusing to allow appellant to object to questions asked the defendants Dozier and O'Keefe. He cites no place in the record where any such ruling was made, and we are unable to find it. In discussing the point in his brief, however, he refers to the following testimony of O'Keefe with relation to the hearing at the removal proceedings in California upon cross examination by the District Attorney after his direct examination by O'Keefe's attorney, Mr. Ward:

"O'Keefe, * * * I was represented by counsel out there.

"Q. And paid them attorneys' fees out there?

"Mr. Miller (attorney for appellant): That is objected to as immaterial.

"The Court: Overruled.

"Mr. Miller: An exception, if the court please.

"The Court: Go ahead.

"Witness: Mr. Huteson paid them. The counsel fees were paid by Mr. Huteson. The removal hearing was appealed to the Circuit Court of Appeals and the transcript made. The expense of that transcript was paid by Mr. Huteson. * * *".

If the question were an improper one, appellant's objection was not sufficiently specific to warrant the court in considering it. Especially is this true in view of the fact that neither O'Keefe nor his attorney objected to it. If the objection were in the proper form, it is quite certain that assignment 22 does not cover the ruling. But aside from these observations the subject matter of the answer was a proper matter of inquiry as bearing on the interest of the witness. It is quite evident that the answer was not responsive to the question and for that reason might have been stricken had appellant made a motion to that effect, but he did not choose to do so, and he can not now complain.

█ Appellant further insists that the court erred in refusing to allow him to cross-examine his co-defendant Dozier. After Dozier and O'Keefe had rested their case, Dozier, without objection, was recalled by the court and in response to a question by the court, said,

"I stated yesterday that O'Keefe and I were in business in 1931 at Buffalo and that Huteson was there or was furnishing the money. We went there in June of 1931. We were there until October of 1931 or about the last part of September. I did not find out while we were there about the indictment that was returned in this court on September 19th. That was not the reason we quit there. I went back to California and it was in California that I learned for the first time about the indictment.

"The Court: I see. That is all.

"Mr. Ward (attorney for O'Keefe): That is all.

"Mr. Miller (attorney for appellant): May I ask a few questions?

"The Court: I don't know whether counsel wants you to make this defendant your witness, or not.

"Mr. Miller: I was just going to ask that I be permitted to call Mr. Dozier as a witness on behalf of my client.

"Mr. Ward: We rest, your Honor.

"The Court: Do you have any objection?

"Mr. Ward: I have rested my case and I do object to any further cross-examination. Of course, I want the witness to answer any

questions your Honor might have, but I have rested my case.

"The Court: I don't think it would be proper to call another man's client.

"Mr. Miller: Very well, your Honor."

Thereupon appellant introduced certain evidence to maintain the issues in his behalf, but did not call O'Keefe. It is quite evident that appellant merely desired to use O'Keefe as his own witness out of order, and not for the purpose of eliciting further material evidence upon the subject matter covered by the court's questions, and the ruling was correct; especially is this true in view of the fact that the attorney for both Dozier and O'Keefe objected. Even if appellant in good faith desired to cross-examine on the subject matter touched upon by the court, the record does not show the necessity of a cross-examination, and the court did not abuse its discretion in not permitting it. That appellant was not harmed in this respect we think there can be no doubt, and he evidently thought the same as he saved no exception to the court's ruling and never after offered to recall O'Keefe as his witness.

Judgment affirmed.