

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. A. Davis
State Registrar
Texas State Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-2861
Re: Proper place in which to
submit record of unregis-
tered birth.

This will acknowledge receipt of your letter of
December 9, 1940, enclosing a photostatic copy of a letter
received by you from Mr. Marion R. McClanahan. He desires
to know whether the record of his birth should be registered
in Texas under the provisions of House Bill 614, Acts 1939,
46th Legislature, page 346, or in the State of Oklahoma.

Mr. McClanahan's letter reads in part as follows:

"Briefly, the history is this: In 1819, as we
all know, Texas was a part of Mexico, which was
then a part of Spain. On February 22, 1819, Spain
and the United States entered into a treaty defin-
ing the boundary line between them. This line
from what is now the northeast corner of the
State of Texas followed the Red River to the 100th
Meridian, and then due north. This treaty re-
ferred to a map called the 'Melish' map. It
showed the 100th Meridian east of where the north
fork of Red River and the Prairie Dog Town River
join, whereas the true 100th Meridian lies west
of where those rivers join. Greer County, Texas,
as it existed when I was born there, lies in the
forks of those two rivers and east of the true
100th Meridian. The Republic of Texas claimed
the land, and after Texas was admitted as a state,
the State claimed the land. The Supreme Court
of the United States in 1896 in a suit brought by
the United States, styled United States Vs. Texas,

Honorable W. A. Davis, Page 2

162 U. S. 1, 16 Sup. Ct. 725, held that the
land was located in the territorial limits of
the United States and without the State of
Texas. On May 2, 1890, an Act of Congress
was approved by the President, providing for
the organization of the Oklahoma Territory,
in which Act it is provided 'It is hereby
expressly provided that this act shall not be
construed to apply to said Greer County until
the title to the same has been adjudicated
and determined to be in the United States',
and proceeds to direct the Attorney General
of the United States to bring the above suit.
United States Vs. Texas, 143 U.S. 621.

"On February 8, 1860, the Legislature of
the State of Texas passed an Act creating
Greer County. Sayles, Early Laws of Texas, 2;
Art. 2886; Gammels Law of Texas, Vol. 4, page
1500. In July, 1886 the settlers of Greer
County organized the county and named Mangum
as the County Seat, and from that time to 1896
Greer County was operated as a regular county
in Texas, having a regular county organization,
county officers, court house, jail, schools,
county and district courts, and all the other
attributes of a regular county, and recognized
by the State of Texas as a regular county. 'The
Greer County Question' by Webb Leonidus Moore,
pages 76, 84; United States Vs. Texas, 162
U.S. 1, 16 Sup. Ct. 725, 754, 143 U.S. 643,
12 Sup. Ct. 488, 490. After the decision of
the Supreme Court in 1896, the United States
took over this territory, and Greer County,
the organization ceased to exist, and has never
existed since that time. In 1907 Oklahoma
was admitted as a state and thereafter organized
this territory which had been Greer County
under the Texas rule into four counties now
known as Harmon, Jackson, Beckman and Greer
Counties. Possibly Harmon County, Oklahoma,
as now constituted has within its territorial
limits the land on which I was born. Harmon
County, Oklahoma is not a successor to Greer
County, Texas; they did not receive their
authority for existence from the same governmental

source, as Harmon County was created and organized by the State of Oklahoma, and Greer County was created and organized by the State of Texas. When I was born, Texas was exercising sole authority in governmental matters over the place of my birth. The date of my birth was March 10th, 1892. The State of Oklahoma was not then in existence. I have never lived in the State of Oklahoma. I was born in Texas, where my parents were then exercising and enjoying the privileges of citizens of the State of Texas, and subject to the laws of the State of Texas. I was carried from Greer County by my parents when I was two years of age, and before the land on which I was born was taken from Texas, and while Texas was still exercising jurisdiction over said land and the inhabitants thereof. I have never lived there since that date. My permanent home is now, and has been for almost twenty years, in Bexar County, Texas. Before that it was in Brown County, Texas. I claim to be and am a native-born Texan."

House Bill No. 614, Acts of 1939, 46th Legislature, p. 346, provides that the registration of births or deaths not previously recorded may be submitted to the probate court in the following manner:

"'And provided further, that any citizen of the State of Texas wishing to file the record of any birth or death, not previously registered, may submit to the Probate Court in the county where the birth or death occurred, a record of that birth or death written on the adopted forms of birth and death certificates. The certificate shall be substantiated by the affidavit of the medical attendant present at the time of the birth, or in case of death, the affidavit of the physician last in attendance upon the deceased, or the undertaker who buried the body. When the affidavit of the medical attendant or undertaker cannot be secured, the certificate shall be supported by the affidavit of some person who was acquainted

Honorable W. A. Davis, Page 4

with the facts surrounding the birth or death, at the time the birth or death occurred, with a second affidavit of some person who is acquainted with the facts surrounding the birth or death, and who is not related to the individual by blood or marriage. The Probate Court shall require such other information or evidence as may be deemed necessary to establish the citizenship of the individual filing the certificate, and the truthfulness of the statements made in that record. The Clerk of the said Court shall forward the certificate to the State Bureau of Vital Statistics with an order from the Court to the State Registrar that the record be, or be not, accepted. The State Registrar is authorized to accept the certificate when verified in the above manner, and shall issue certified copies of such records as provided for in Section 21 of this Act. Such certified copies shall be prima facie evidence in all Courts and places of the facts stated thereon. The State Bureau of Vital Statistics shall furnish the forms upon which such records are filed, and no other form shall be used for that purpose.'" (Underscoring ours.)

Reference is made in Mr. McClanahan's letter to the case of United States v. Texas, 162 U. S. 1, 16 S. Ct. 725. That case decided the famous "Greer County dispute" and the court held:

"It is . . . decreed . . . that the territory . . . which . . . is sometimes called 'Greer County', constitutes no part of the territory properly included within or rightfully belonging to Texas at the time of the admission of that state into the Union and is not within the limits nor under the jurisdiction of that state but is subject to the exclusive jurisdiction of the United States of America."

You will observe that Mr. McClanahan was born in 1892 in "Greer County" but that the court in the case cited held that that territory was not nor had ever been a part of Texas since the time of its admission into the Union.

Honorable W. A. Davis, Page 5

A similar question arose in opinion No. 0-2725. There it appeared that certain individuals were born at Encino, Texas, now in Brooks County, but which town at the time of the births was in Hidalgo County. We held that Brooks County was the proper county for the institution of registration proceedings, that the act has in contemplation counties as presently, and not as formerly constituted, that Hidalgo County as presently constituted, is not the county "where" or in which the birth occurred.

So also in the present instance. There is no county in Texas nor has there been since Texas was admitted to the Union in which Mr. McClanahan's birth could have occurred. The county or territory "where" he was born is not and has never been in the State of Texas. It follows and we must advise you that no probate court in Texas has jurisdiction to entertain the proceedings contemplated by House Bill 614 of the Acts of 1939 insofar as Mr. McClanahan is concerned.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By James D. Smullen
Assistant

JDS:GO

APPROVED DEC 18, 1940

ATTORNEY GENERAL OF TEXAS